**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Alan Forest HERBST, Mark Blane Griffin and Stephen Dale McGowan, Defendants-Appellants.**

**No. 80-7341.**

United States Court of Appeals, Fifth Circuit. Unit B

April 8, 1981.

Kenneth T. Humphries (Court appointed), Atlanta, Ga., for Herbst.

Jay Strongwater, Asst. Federal Public Defender, Atlanta, Ga., for Griffin.

Michael A. Kessler (Court appointed), Atlanta, Ga., for McGowan.

Richard W. Hendrix, Asst. U. S. Atty., Atlanta, Ga., for United States.

Before TJOFLAT and FRANK M. JOHNSON, Jr., Circuit Judges and SCOTT *, District Judge.

FRANK M. JOHNSON, Jr., Circuit Judge:

*Facts*

Appellant Alan Herbst was convicted after a non-jury trial of knowingly, intentionally and unlawfully possessing 110.1 grams of cocaine hydrochloride with intent to distribute in violation of 21 U.S.C.A. § 841(a)(1) and 18 U.S.C.A. § 2.[1] Appellants Mark Griffin and Stephen McGowan were charged with aiding and abetting Herbst; Griffin and McGowan were also found guilty by a jury of violating 21 U.S.C.A. § 841(a)(1) and 18 U.S.C.A. § 2. Our review of the record reveals that appellants' contentions that the district court erred by denying their motion to suppress and by failing to grant use immunity to a defense witness are without merit. Accordingly, their convictions are affirmed.

* District Judge of the Middle District of Florida, sitting by designation.

1. Herbst's conviction was based on stipulated facts and on evidence produced during the

On November 15, 1979, Officers Brennan and Green of the Broward County Sheriff's Airport Detail observed the movements of Herbst, McGowan and Griffin at the Ft. Lauderdale, Florida, airport. The officers saw a man, later identified as appellant Herbst, enter the terminal and briefly scan the area around him; he ceased his scanning activity when he apparently made eye contact with two men, later identified as appellants Griffin and McGowan, who had entered through a different entrance. Officer Brennan overheard Griffin and McGowan identify themselves as Garrett and Davis at the Delta ticket counter; Griffin and McGowan were requesting new seats in the coach section for Delta Flight # 906 to Atlanta and then Flight # 333 to Memphis since the third member of their party, a Mr. Cleveland who had made the reservations, would not be joining them. Meanwhile, Officer Green observed Herbst at a ticketing position several feet away identify himself as A. Cleveland; Herbst told the ticketing agent that the first class reservations had been made by Garrett and Davis but that they were unable to make the trip.

After the three men left the ticket counter they were observed meeting together at a bar in the terminal. Officer Brennan also learned from the Delta ticket agent that passenger Cleveland (Herbst) stated that he had no identification and paid for his ticket in cash. None of the appellants checked any luggage; Herbst had a garment bag which he carried with him and Griffin and McGowan had one small blue suitcase between them which was also carried on board.

Officer Brennan decided he needed assistance in interviewing the three men that he suspected were drug couriers. He relayed the information he had to Drug Enforcement Administration [DEA] Agent Mathewson in Atlanta. Agent Mathewson made

hearing before the United States Magistrate on appellants' motion to suppress the seized evidence.

a further check on the Passenger Number Reservations [PNRs] histories of the three suspects and learned the following information from three separate PNRs. First, a party of three consisting of S. Davis, M. Garrett and Cleveland had reservations on Delta Flights # 906 and # 333 that were made after reservations for an earlier flight had been changed; this PNR had a local call back number that was listed as the Wilton Manors, Florida, Police Department. Second, Cleveland's PNR for Flight # 906 did not have a local telephone contact and revealed that this reservation was made two minutes prior to those made by passengers Davis and Garrett. Third, Cleveland's PNR cancelling his reservation for the earlier flight to Memphis again showed that the three men were to travel together and that this reservation was also made within two minutes of the ones made by passengers Davis and Garrett; moreover, the local call back number on this PNR (which was only one digit different than the call back number to the Police Department) was listed to the Gateway Hotel in Ft. Lauderdale. A night manager at the hotel told Mathewson that a Mark Garrett had registered for two people at 5:45 a. m. that same day and had checked out before noon; moreover, Garrett had paid in cash, gave no address, and arrived without a car.

Mathewson then relayed all of this information to Atlanta based DEA Agents Markonni and Chapman and Police Detective Burkhalter. The officers met Flight # 906 and, relying on Brennan's descriptions, noted that suspect Cleveland (Herbst) was one of the first passengers to deplane. Herbst then waited and watched the other passengers deplane; suspect Davis (Griffin) deplaned and spoke briefly to Herbst. Suspect Garrett (McGowan) exited next, carrying the blue suitcase, and the three men had a brief conversation before they walked to the departure gate for their connecting flight to Memphis. Agents Mathewson and Chapman approached Griffin, who was the first of the three suspects to exit from a rest room. The agents identified themselves as police officers and asked if he minded talking to them, and Griffin indi-

cated his consent. Griffin's ticket envelope contained two tickets issued to S. Davis and M. Garrett; in response to a question from Mathewson, Griffin said he was Steve Davis. Griffin said he had no other identification and appeared very nervous.

Agent Markonni and Detective Burkhalter observed Herbst and McGowan leave the rest room and walk toward Griffin and the other agents. After a brief conversation, McGowan approached the area where Griffin was being interviewed while Herbst walked past the interview area. Agent Mathewson asked McGowan if he was Garrett and McGowan replied yes. However, when asked for identification, McGowan gave the agent his driver's license which read Stephen Dale McGowan. McGowan then admitted his name was not Mark Garrett. In response to further questions about the nature of their trip, Griffin stated he was visiting a relative and had been there for two or three days. The agents then identified themselves as federal narcotic agents and asked them if they were carrying drugs; McGowan and Griffin said no. The agents then asked if McGowan and Griffin would agree to a search of themselves and the blue suitcase. They agreed and followed Mathewson's suggestion that the search be conducted in the more private Delta employees' lounge.

Once in the lounge, Mathewson read Griffin and McGowan their rights concerning the search; both again agreed to be searched. Agent Chapman then informed them that he observed McGowan throw a suspected marijuana cigarette on the floor as they had walked into the lounge. The search of the two men and the suitcase did not reveal any other drugs but did disclose Griffin's true identity and an airline ticket on Griffin showing travel from Memphis to Miami during the early morning hours of that same day.

During the search, the other officers maintained surveillance of Herbst. Herbst continually watched the search from a distance and appeared nervous and concerned about the search. A few minutes later Agent Markonni and Detective Burkhalter

approached Herbst and after identifying themselves asked if they could talk to him for a few minutes. Herbst agreed, showed his ticket issued to A. Cleveland and said his name was Al Cleveland. In response to further questions Herbst stated that he had no identification, he was traveling alone, and he had stayed at a friend's house for several days. Herbst also said that he was not carrying drugs and would consent to a search. Agent Markonni again asked him if he was traveling alone and he said no. Agent Markonni gave Herbst the option of being searched in public or inside an office and Herbst indicated he preferred the Delta office. Upon entry, Mathewson announced that both of his suspects had been lying and that a marijuana cigarette had been found. Markonni pointed at Griffin and McGowan and asked Herbst if he knew them and he denied knowing them. Markonni advised Herbst that he had the right to refuse or to allow a search and that he had the right to consult an attorney prior to a search; Herbst indicated he understood and agreed to a search of his garment bag. However, Herbst, who appeared very nervous, would not allow the agents to search his body as it was a personal embarrassment to him, a reputable businessman.

The search of the bag revealed two used tickets issued to A. Cleveland and S. Davis for a flight from Memphis to Miami that arrived during the early morning hours of the same day. Herbst was searched over his protest and approximately 146.4 grams of suspected cocaine were found concealed in his right boot. Agent Markonni formally placed Herbst under arrest while Agent Mathewson arrested Griffin and McGowan.

Appellants made a pretrial motion to suppress the evidence seized by the DEA agents. After a full evidentiary hearing, United States Magistrate Dougherty found

that probable cause existed for the arrests and recommended that the motion to suppress be denied. The United States District Court for the Northern District of Georgia adopted the United States Magistrate's report and recommendation (with a few exceptions)[2] and held that the search was legal.

One day prior to McGowan's and Griffin's trial, Griffin's counsel moved for a continuance on the basis of representations made by Herbst's attorney that Herbst could give exculpatory testimony if he could testify after his sentencing. Herbst had already been convicted on the basis of stipulated facts and indicated he was willing to testify if he was granted immunity. The district court denied the motion for continuance; after the Government rested its case, McGowan and Griffin again moved that the court grant use immunity to Herbst to allow him to testify for the defense. The district court denied this oral motion because it could not find any authority for the granting of judicial use immunity. Herbst was called as a defense witness but he claimed the Fifth Amendment in response to all questions. Defense counsel never made a specific proffer of what Herbst's testimony would disclose.[3] Appellants Herbst, McGowan and Griffin all appeal the denial of their motion to suppress; McGowan and Griffin also appeal the district court's failure to grant use immunity to Herbst.

*The Search*

It is well settled that McGowan and Griffin cannot challenge the constitutionality of the search of co-defendant Herbst because they failed to prove any legitimate expectation of privacy regarding a personal search of Herbst. *Rawlings v. Kentucky,* 448 U.S.

**2.** The United States Magistrate made an erroneous factual finding regarding the agents' discovery of Herbst's true identity. The United States Magistrate had concluded that Agent Markonni knew at the time of the search that Herbst had used an alias; this conclusion was erroneous as Herbst's true identity was not disclosed until a much later point. The district court noted that its modification of certain fac-

tual findings did not alter its conclusion that probable cause existed to search Herbst.

**3.** Oral argument disclosed that presumably Herbst was going to testify that he offered McGowan and Griffin a free trip to Florida under fictitious names and that they were unaware that drugs were involved.

98, 106, 100 S.Ct. 2556, 2562, 65 L.Ed.2d 633 (1980); *Rakas v. Illinois*, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978); *United States v. Evans*, 572 F.2d 455, 486 (5th Cir.), *cert. denied*, 439 U.S. 870, 99 S.Ct. 200, 58 L.Ed.2d 182 (1978). McGowan and Griffin were both charged with possession of the cocaine found taped to Herbst's leg; they could claim the benefit of the exclusionary rule only if their Fourth Amendment rights were in fact violated by the agents' search of Herbst. *Rakas v. Illinois, supra*, 439 U.S. at 131–34, 99 S.Ct. at 424–26. McGowan adopted Herbst's pretrial motion to suppress and further alleged that he had automatic standing to challenge Herbst's search since he was charged with possession.[4] Moreover, McGowan contends on appeal that his Fourth Amendment rights were violated because the DEA agents, operating only on the basis of certain manifestations of the drug courier profile,[5] lacked probable cause to stop, question and search him or his co-defendants.

■ Our review of the record reveals that the initial investigative stop of appellants McGowan and Griffin by DEA Agents Mathewson and Chapman did not violate their constitutional rights. It is clear that, if the agents had searched or seized McGowan and Griffin without their consent solely on the basis of the information in the agents' possession prior to the stop, McGowan's argument would have merit. *Reid v. Georgia*, 448 U.S. 438, 100 S.Ct. 2752, 65 L.Ed.2d 890 (1980) (per curiam) held that profile characteristics alone will not give rise to the requisite reasonable suspicion necessary to justify an investigatory stop. However, on appeal neither McGowan nor Griffin challenge the voluntariness of their consent to talk to the agents; since both men were free to decline to talk to the agents, they were not seized during the initial encounter. *See United States v. Berd*, 634 F.2d 979, 985 (5th Cir. 1981);

*United States v. Bowles*, 625 F.2d 526, 532 (5th Cir. 1980); *United States v. Robinson*, 625 F.2d 1211, 1218 (5th Cir. 1980).

■ Moreover, once Griffin and McGowan responded to the agents' questions, their answers supplied the agents with a reasonable suspicion that they were engaged in criminal activity. *United States v. Berd, supra*, 634 F.2d at 986; *see also United States v. Pulvano*, 629 F.2d 1151, 1155 (5th Cir. 1980). McGowan voluntarily produced his real driver's license which proved that he had given false information to the agents when he said his name was Garrett; McGowan was also the one who dropped a suspected marijuana cigarette on the way to the office. After the voluntary search of McGowan and Griffin was conducted, the agents learned Griffin's true identity and that both men had been lying about the length of their stay in Florida. These facts, along with the profile characteristics, provided the agents with the requisite probable cause to place McGowan and Griffin under arrest, even without the additional proof supplied by the cocaine found on Herbst.

■ Fourth Amendment rights are personal rights that may not be vicariously asserted. *Rakas v. Illinois, supra*, 439 U.S. at 133–34, 99 S.Ct. at 425–26. Since McGowan and Griffin did not have "automatic standing" to challenge the legality of Herbst's search (which produced the cocaine), their challenge to the district court's denial of the motion to suppress must fail unless they could demonstrate a legitimate expectation of privacy in the cocaine strapped to Herbst's leg. *See Rawlings v. Kentucky, supra*, 100 S.Ct. at 2561–62; *United States v. Salvucci*, 448 U.S. 83, 95, 100 S.Ct. 2547, 2555, 65 L.Ed.2d 619 (1980) (abrogating automatic standing doctrine). McGowan and Griffin have not asserted any privacy interests in the contra-

---

4. Apparently McGowan did not move to suppress the evidence of the marijuana cigarette that he abandoned upon entering the lounge. Griffin conceded that he did not have standing

after the United States Magistrate's report was filed.

5. *See generally United States v. Ballard*, 573 F.2d 913, 914 (5th Cir. 1978).

band found on Herbst;[6] since we conclude that Herbst's search was legal, McGowan and Griffin lack standing to attack the district court's denial of the motion to suppress.

Herbst contends that his Fourth Amendment rights were violated by the DEA agents' warrantless search that was not founded on probable cause. Moreover, he argues that he was actually arrested when Agent Markonni asked him to accompany the agents to the Delta office for a search; thus he alleges that the Government did not meet its burden of showing that Herbst's consent to be searched was voluntary. Our review of the factual circumstances of Herbst's stop reveals that his contentions are without merit.

 Again, if the DEA agents had stopped and searched Herbst solely on the basis of certain manifestations of profile characteristics,[7] such action would have violated Herbst's constitutional rights. However, Herbst's statements made immediately after the initial stop, to which the record reveals he consented, provided the agents with reasonable suspicion to detain Herbst further.[8] *See United States v. Bowles, supra*, 625 F.2d at 532; *United States v. Elmore*, 595 F.2d 1036, 1039 (5th Cir. 1979). Herbst's statements that he did not know McGowan and Griffin, and that he had been in Florida for several days, were proven false when his garment bag was searched. While we agree with Herbst that seizure occurred when Agent Markonni asked Herbst to accompany him to the Delta office,[9] we do not agree that the Government failed to meet its burden of showing that Herbst's consent to the search of his garment bag was voluntary. *See United States v. Robinson, supra*, 625 F.2d at 1218.

 Since the district court's factual determination regarding the voluntariness of Herbst's consent was based on the United States Magistrate's Report, we are not bound by the clearly erroneous standard. *See United States v. Pulvano, supra*, 629 F.2d at 1156. Our independent review of the record reflects that once Herbst was in the Delta lounge he understood that he had

---

**6.** Since Griffin's defense was that he was unaware that Herbst carried drugs, he certainly could not claim *any* expectation of privacy in the contraband.

**7.** Those characteristics included (a) Herbst's disassociation behavior toward McGowan and Griffin in both airports, given the three PNRs linking the three aliases together, (b) his lack of personal identification at the Delta counter, (c) his nervous scanning of areas in both the Ft. Lauderdale and Atlanta airports, (d) his use of cash to pay for his ticket and lack of checked luggage, and (e) *his departure from a known* "source" city.

**8.** The issue of when a "seizure" of an individual has occurred and the quantum of proof necessary to justify such a seizure is an unsettled one. For example, the Supreme Court in *United States v. Mendenhall*, 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980), did agree that agents must have reasonable suspicion to justify a seizure, but the Court could not agree whether the police-citizen contact involved constituted a seizure within the meaning of the Fourth Amendment. Similarly, this Circuit has held that a seizure requires only reasonable suspicion, *see United States v. Berd, supra; United States v. Elmore, supra*; on the other hand, we have also held that a seizure is an

arrest requiring probable cause. *See United States v. Hill*, 626 F.2d 429 (5th Cir. 1980); *see also United States v. Pulvano, supra*, 629 F.2d at 1154 (Court suggests probable cause might be necessary in some instances to justify a seizure); *United States v. Fry*, 622 F.2d 1218 (5th Cir. 1980) (following *Mendenhall*, Court makes alternative findings).

Part of the conflict is a result of differing definitions of the word "seizure." Whether a seizure should be treated (a) as an arrest requiring probable cause, (b) as a police-citizen contact requiring no justification, or (c) as an intermediate concept between these two extremes requiring reasonable suspicion, is an issue that has not been squarely addressed by this Circuit. *See United States v. Bowles, supra*, 625 F.2d at 532, n. 6; *see generally United States v. Robinson, supra*. The dominant view in this Circuit appears to be that a seizure occurs when an individual is no longer free to leave and is justified when supported by reasonable, articulable suspicion. *See United States v. Elmore, supra*.

**9.** It is clear that at this point Herbst would not have been free to leave, *i. e.*, the agents probably would have apprehended him had he attempted to leave the terminal. *See, e. g., United States v. Hill*, 626 F.2d 429 (5th Cir. 1980).

the choice to consent or consult with an attorney prior to giving his consent; it is significant that Herbst gave his consent to the search of his garment bag but refused his consent to a personal body search. *See United States v. Robinson, supra,* 625 F.2d at 1218–19. The two ticket coupons discovered during the search of the garment bag confirmed that Herbst had been lying about the length of his stay and that he did not know Griffin, alias S. Davis. This information, along with all of the other information obtained up to that point, provided the agent with probable cause to institute a personal search of Herbst over his protest. *See United States v. Bowles, supra,* 625 F.2d at 533; *United States v. Ashcroft,* 607 F.2d 1167, 1170 (5th Cir. 1979). The cocaine seized was thus a lawful incident of Herbst's arrest. We conclude that the district court properly denied appellants' motion to suppress the cocaine seized at the airport.

*Judicial Use Immunity*

■ Appellants McGowan and Griffin assert a novel argument that their Sixth Amendment rights to compulsory process were violated by the district court's failure to grant Herbst immunity for his alleged exculpatory testimony. Their argument is premised on the principle embodied in *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1967) and its progeny, namely, that in the interests of a fair trial a defendant is entitled to exculpatory information in the Government's possession. Thus, they contend that, because the Government was in a position to provide statutory immunity to Herbst, and McGowan and Griffin had no other means to obtain his testimony, the district court's failure to grant judicial use immunity violated their constitutional rights.

McGowan and Griffin rely primarily upon *Government of Virgin Islands v. Smith,* 615

F.2d 964, 969 (3rd Cir. 1980), where the Court stated that it would enter a judgment of acquittal if the Government failed to offer use immunity to an unavailable, material defense witness. There are several reasons why we decline to follow the Third Circuit in fashioning a doctrine of judicial use immunity in this case. First, the *Virgin Islands* case is clearly the minority view. *See, e. g., United States v. Gleason,* 616 F.2d 2, 28 (2d Cir.), *cert. denied,* 444 U.S. 1082, 100 S.Ct. 1037, 62 L.Ed.2d 767 (1980); *United States v. Lenz,* 616 F.2d 960 (6th Cir.), *cert. denied,* 447 U.S. 929, 100 S.Ct. 3028, 65 L.Ed.2d 1124 (1980); *United States v. Graham,* 548 F.2d 1302, 1315 (8th Cir. 1977); *United States v. Alessio,* 528 F.2d 1079 (9th Cir.), *cert. denied,* 426 U.S. 948, 96 S.Ct. 3167, 49 L.Ed.2d 1184 (1976).

■ Moreover, the defense never made to the district court a specific proffer as to the nature of the alleged exculpatory testimony.[10] An affidavit filed by Herbst's attorney, which states in conclusory terms that Herbst could offer exculpatory testimony, is the sole basis of appellants' claim. The district court was never requested by the defense to conduct an in-camera hearing relating to the proffered exculpatory information. During oral argument appellants' counsel were unable to demonstrate, on the basis of the record, any specific showing of prejudice to McGowan and Griffin resulting from the district court's failure to grant Herbst immunity. There was no showing that the Government had the exculpatory information in its possession or of any prosecutorial misconduct as in the *Virgin Islands* case.[11] Even if we were inclined to follow the Third Circuit's view, the record is insufficient to allow us to conclude that McGowan's and Griffin's constitutional rights were violated. *See United States v. Lenz, supra,* 616 F.2d at 964.

Finally, this Court has previously held that a district court has no authority to

---

**10.** We do note that, since all of defense counsel's arguments were directed to the district court's position that it had no authority to grant use immunity, a specific proffer probably would have been futile.

**11.** We note in passing that neither *Brady* nor its progeny places an affirmative duty upon the Government to assist the defense in the presentation of its case.

grant statutory immunity (under 18 U.S.C. § 6002 (1976)) to a defense witness; such authority resides exclusively in the Executive branch. *See, e. g., United States v. Beasley*, 550 F.2d 261, 268 (5th Cir. 1977). However, we note that the issue of whether the Sixth Amendment's compulsory process clause or the Fifth Amendment's due process clause may, in some circumstances, require judicial use immunity, did not arise in that case (or in any other Fifth Circuit case). Because we conclude that the record below, for reasons herein noted, is insufficient to allow us to reach these constitutional issues, the district court properly denied McGowan's and Griffin's motion to grant judicial use immunity to Herbst. Accordingly, the convictions of appellants Herbst, McGowan and Griffin are AFFIRMED.