UNITED STATES of America,
Plaintiff-Appellee,

v.

Paul Edward MOELLER,
Defendant-Appellant.

No. 80–7797
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.
Unit B

May 8, 1981.

Rehearing Denied June 8, 1981.

Phillip Louis Ruppert, Waymon Sims, Jonesboro, Ga., for defendant-appellant.

William S. Sutton, Asst. U. S. Atty., Atlanta, Ga., for plaintiff-appellee.

Before RONEY, FRANK M. JOHNSON, Jr., and HENDERSON, Circuit Judges.

FRANK M. JOHNSON, Jr., Circuit Judge:

Defendant Moeller was convicted of possession of cocaine hydrochloride with intent to distribute in violation of 21 U.S.C. § 841(a)(1). He appeals, urging that the trial court erred by denying his motion to suppress evidence of the cocaine seized at the time of the arrest. Finding no Fourth Amendment violation, we affirm.

The facts are undisputed. At approximately 8:55 a. m. on May 8, 1980, Drug Enforcement Administration Agent Mathewson observed the deplaning of an incoming commercial airline flight at the Atlanta airport. The flight was from West Palm Beach, Florida, which Agent Mathewson knew to be a primary distribution point for cocaine. Agent Mathewson noticed among

the deplaning passengers defendant, who was later identified as Paul Moeller. Carrying a small totebag, defendant deplaned and walked toward an airline information agent stationed in the arrival area. He removed an airline ticket envelope from his pocket and asked the information attendant for directions to his connecting flight to Indianapolis, Indiana. The attendant directed defendant to gate 59. At this time, Agent Mathewson, who was standing near the attendant, noticed that defendant's ticket was a cash ticket and no baggage claim check stubs were attached to it. Agent Mathewson decided to keep defendant under surveillance as he proceeded to gate 59.

On his way to gate 59 defendant stopped in a restroom, thus allowing Mathewson to reach the gate first. Mathewson spoke with the airline ticket agent at gate 59, giving him defendant's description and asking him to set defendant's ticket aside after defendant surrendered it for the flight. Mathewson then walked in the direction in which he had last seen defendant. He spotted defendant using a pay telephone. Defendant completed his call and proceeded to gate 59 where he checked in with the airline attendant and sat down in the waiting area. Agent Mathewson then inspected defendant's surrendered ticket coupon and learned that the ticket was issued in the name of Paul Moeller for one-way travel between West Palm Beach and Indianapolis via Atlanta. The ticket had been purchased with cash and bore no claim check stubs for additional luggage. Mathewson left the ticket with the attendant and went to a nearby airline reservation computer to check the reservation history for Paul Moeller. The computer check verified the information on the ticket and additionally indicated that the reservation had been made about three hours prior to departure and that no local telephone contact for West Palm Beach had been given when the reservation was made. From his experience in enforcing drug laws, Agent Mathewson knew that drug couriers often purchase their tickets with cash only hours before departure and often do not provide a local telephone contact.

After checking the reservation history, Agent Mathewson returned to gate 59, approached defendant, told defendant he was a police officer, and asked defendant to speak with him. Because the waiting area was crowded, Mathewson asked if defendant would mind stepping out of the gate area to speak with him. Without responding verbally, defendant walked with Mathewson approximately twenty to thirty feet to a railing that separated the waiting area from the adjacent concourse. Mathewson again identified himself as a police officer by displaying his credentials and asked if defendant would consent to speak with him for a few minutes. Without objecting or questioning the agent's authority, defendant agreed. When asked about his ticket, defendant handed it to Mathewson. Mathewson asked defendant for his name and defendant replied "Paul Moeller." Mathewson asked for identification and defendant produced a driver's license issued to Paul Moeller. At this time, Mathewson noticed that defendant's breathing was becoming more rapid and his hands were trembling. Mathewson examined the license briefly. In response to a question, defendant told Mathewson that he had been visiting relatives in West Palm Beach for about a week. Mathewson advised defendant that he was a federal narcotics agent looking for drugs passing through the airport and asked if defendant would cooperate by allowing a search to be conducted of his person and totebag. Defendant asserted that he was carrying no drugs and stated that he was "not sure" about the search. Mathewson explained that he only wanted to pat defendant down and look in his totebag. Defendant agreed. Following DEA procedure, Mathewson asked if defendant would prefer to have the search conducted at their present location or in a more private area. Defendant, after being assured that he would not miss his flight if no drugs were found, stated that he would prefer to move to a more private area. They then proceeded to a Delta airline office.

As they entered the Delta office, defendant placed his bag on a table, pulled a

prescription-type vial from the bag, and said, "I do have a little bit of speed but that is all I have." Mathewson, who recognized that some of the contents of the vial were controlled substances, asked if the drugs had been prescribed by a physician. Defendant smiled and replied, "I just picked them up." Because defendant revealed this information almost as soon as they reached the office, Mathewson had not advised him of his right to refuse to be searched or his right to consult with an attorney. After examining the contents of the vial, Mathewson searched the totebag, finding a brown paper bag containing a quantity of white powder substance wrapped in a clear plastic bag. Defendant identified this substance as mannite, a substance Mathewson knew was commonly used as a cutting agent for narcotics. Mathewson also found a variety of items of drug paraphernalia. Mathewson then conducted a pat down search, and he felt what he suspected to be concealed drugs. Mathewson then placed defendant under arrest and continued the search. A plastic bag of suspected cocaine was found on defendant's person. Defendant was then taken to the DEA airport office where he was processed and thorough searches of his person and bag were conducted. In the bag Mathewson found a Johnson's Baby Powder container, in which was concealed a second quantity of suspected cocaine.

Defendant filed a motion to suppress evidence of the contraband, contending that the initial stop was illegal. Defendant further urged that, even if the initial stop was legal, the later seizure was violative of the Fourth Amendment because it was not based on probable cause. After a hearing, the magistrate concluded that the initial stop was constitutionally valid and that defendant had consented to be searched. The magistrate further reasoned, once defendant voluntarily revealed that he was carrying controlled substances in the prescription vial, Agent Mathewson had probable cause to arrest defendant and therefore any search incident to that arrest was legal. Indicating that it was troubled over the issue of consent, the district court heard

additional testimony. At the conclusion of the testimony, the district court opined that defendant consented to the search and thus the evidence was admissible. On appeal, defendant adheres to his position that both the initial stop and the later seizure were illegal.

▮ We find no merit to the argument that the initial stop of defendant by Agent Mathewson was illegal, for the record is clear that defendant was not, at that point, restricted in any way. He was free to talk with Mathewson or, if he wished, to walk away. So long as a citizen is not restrained in any way or so long as his or her cooperation is not obtained by coercion, force, or other use of authority, a mere police-citizen contact is generally not within the protections of the Fourth Amendment. *United States v. Berd*, 634 F.2d 979 (5th Cir. 1981); *United States v. Pulvano*, 629 F.2d 1151 (5th Cir. 1980); *United States v. Elmore*, 595 F.2d 1036 (5th Cir. 1979), *cert. denied*, 447 U.S. 910, 100 S.Ct. 2998, 64 L.Ed.2d 861 (1980). Thus, neither probable cause nor reasonable suspicion was required to justify the stop.

▮ We similarly have no trouble disposing of defendant's argument that the seizure was illegal. Although the conclusion to be drawn from the evidence is disputed, the record amply supports the district court's conclusion that defendant voluntarily consented to be searched. Without undue or illegal compulsion on the part of Agent Mathewson, defendant agreed to accompany Mathewson to the Delta office for a pat-down search. Before the pat-down could commence, defendant voluntarily produced the vial containing controlled substances. We observe that even in the absence of consent, this admitted possession of controlled substances gave rise to probable cause to search defendant's body and his totebag. *United States v. Herbst*, 641 F.2d 1161, 1167–68 (5th Cir. 1981). In the alternative, the production of the controlled substances gave rise to probable cause to arrest defendant for possession of controlled substances; once probable cause to arrest was

established, any search of the person incident to the arrest was valid. *United States v. Herbst, supra*, 641 F.2d 1161 (5th Cir. 1981); *United States v. Pulvano*, 629 F.2d 1151 (5th Cir. 1980).

The motion to suppress was properly denied.

We AFFIRM.