**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Andrew "Andre" D'APICE,**
**Defendant-Appellant.**

**No. 81–5546.**

United States Court of Appeals,
Fifth Circuit.*
Unit B

Dec. 14, 1981.

Rebekah J. Poston, Miami, Fla., for defendant-appellant.

Marcella Cohen, Miami, Fla., Fred A. Schwartz, Sp. Atty., U. S. Dept. of Justice, Miami Strike Force, Miami, Fla., for plaintiff-appellee.

Before MORGAN, TJOFLAT and ANDERSON, Circuit Judges.

TJOFLAT, Circuit Judge:

The district court adjudged Andrew D'Apice in criminal contempt for refusing to testify in a criminal case under use immunity granted him by the court and the prosecutor. We find that D'Apice's refusal to testify was a valid exercise of his fifth amendment privilege and therefore reverse.

I.

On October 15, 1980, a grand jury in the Southern District of Florida indicted Andrew D'Apice, Robert DiBernardo and Theodore Rothstein for interstate transportation of obscene materials and for conspiring to commit that offense. Subsequently, DiBernardo and Rothstein moved to sever their trial from D'Apice's on the ground that if tried separately, D'Apice would testify on their behalf. Attached to the severance motion was an affidavit of D'Apice affirming that he would testify if his trial were severed, and outlining the nature of his testimony.

At the hearing on the severance motion, D'Apice stated under oath that he was will-

* Former Fifth Circuit case, Section 9(1) of Public Law 96–452—October 14, 1980.

ing to testify if granted use immunity and if his case was tried before DiBernardo's and Rothstein's. The court asked the prosecutor whether the government was willing to apply for statutory use immunity, 18 U.S.C. §§ 6001–6003 (1976), for D'Apice and the prosecutor replied that the government was not.[1] The court then entertained the question whether it had the inherent authority to grant D'Apice use immunity; the prosecutor suggested that Fifth Circuit precedent indicated that the court had no such power. The court nevertheless announced that it was prepared to immunize D'Apice if he still desired to testify in the trial of his co-defendants. With this pronouncement, the prosecutor advised the court that his immediate superior, the attorney in charge of the Organized Crime Strike Force in Miami,[2] had authorized him to say that if the court ordered D'Apice to testify, his testimony would not subsequently be used against him.[3] On the basis of this representation and its belief that it had the inherent power to grant judicial use immunity, the court granted the motion to sever, scheduled D'Apice's trial to follow that of his co-defendants, and conferred use immunity upon him.

D'Apice was called to testify on behalf of DiBernardo at the ensuing trial. Acting on the advice of counsel, D'Apice refused to testify, invoking his fifth amendment privilege. D'Apice's counsel justified his client's action by stating that the court's conferral of use immunity on D'Apice was void, and that the prosecutor's assurance of non-statutory immunity was binding, if at all, only within the Southern District of Florida. Therefore, counsel continued, D'Apice was entitled to remain silent.

The court restated its view that it possessed the inherent authority to grant use immunity; it also observed that the prosecutor's commitment was binding on the whole government. The court therefore ordered D'Apice to testify. D'Apice again refused, and the court summarily held him in contempt. The court found that D'Apice had induced it to sever his trial with the representation, under oath and concurred in by his attorney, that he would testify, and that he had been validly immunized and thus had no fifth amendment privilege; D'Apice's refusal, therefore, was plainly contumacious. The court gave D'Apice the opportunity to purge himself of contempt by testifying before the close of evidence in the pending trial. The next day, as DiBernardo and Rothstein were preparing to rest, the court asked D'Apice to testify, and he declined. The court thereupon sentenced D'Apice to jail for 180 days for criminal contempt. This appeal followed.

D'Apice contends, as he did below, that neither the district court's grant of use immunity nor the prosecutor's promise of non-statutory immunity protected him from subsequent use of his testimony; thus his refusal to testify was a valid exercise of his fifth amendment privilege. The government concedes that the district court had no legal basis for granting D'Apice use immunity but submits that the prosecutor's commitment not to use D'Apice's testimony afforded him adequate protection and rendered his refusal to testify contumacious.

## II.

"A witness may properly invoke the [fifth amendment] privilege when he 'reasonably apprehends a risk of self-incrimination, ... though no criminal charges are pending against him, ... and even if the risk of prosecution is remote.'" *In re Corrugated Container Anti-Trust Litigation,* 620 F.2d 1086, 1091 (5th Cir. 1980), *cert. denied,* 449 U.S. 1102, 101 S.Ct. 897 (1981) (quoting *Wehling v. Columbia Broadcasting System,* 608 F.2d 1084, 1087 n.5 (5th Cir.

---

1. The decision not to grant D'Apice statutory use immunity was made by the Department of Justice and was based on its belief that D'Apice's testimony would be perjurious.

2. Though the record is not clear, it appears that the Organized Crime Strike Force was supervising the prosecution of D'Apice and his co-defendants in this case.

3. The prosecutor stated that the Strike Force's decision to offer D'Apice non-statutory use immunity was based on its desire to cooperate with the court.

1979)). The privilege must be sustained if it is not "perfectly clear" that the witness's answers "cannot possibly" have a tendency to incriminate. *Hoffman v. United States,* 341 U.S. 479, 488, 71 S.Ct. 814, 819, 95 L.Ed. 1118 (1951). *See United States v. Goodwin,* 625 F.2d 693, 700–01 (5th Cir. 1980).

There is no dispute that, absent some form of immunity, D'Apice was entitled to assert his fifth amendment privilege. The gist of his anticipated testimony, as contained in his affidavit, demonstrated that D'Apice was to testify concerning issues that affected his criminal liability. Further, the risk of prosecution was very real, for he still faced trial under the pending indictment.

The question therefore becomes whether, given the immunity conferred by the district court and the prosecutor, D'Apice was nevertheless entitled to assert his fifth amendment privilege and refuse to testify. Stated another way, was this immunity coextensive with D'Apice's fifth amendment privilege, thereby stripping him of the privilege, *see Kastigar v. United States,* 406 U.S. 441, 453, 92 S.Ct. 1653, 1661, 32 L.Ed.2d 212 (1972), and rendering his refusal to testify punishable as criminal contempt?

■ D'Apice argues, and the government concedes, that the district court had no independent authority to bestow use immunity on D'Apice. We must agree. This circuit has never upheld a grant of judicial use immunity and has often rejected the claim that such immunity was required in a given case. *See e. g., United States v. L'Hoste,* 640 F.2d 693, 695 (5th Cir. 1981); *United States v. Barham,* 625 F.2d 1221, 1226 (5th Cir. 1980), *cert. denied* 450 U.S. 1002, 101 S.Ct. 1711, 68 L.Ed.2d 205 (1981). These cases reflect the long-held belief in the federal courts that the decision to confer witness immunity is for the executive branch and not the judiciary. *See, e. g., In re Corrugated Container Anti-Trust Litigation,* 620 F.2d at 1094–95 (district court had no inherent power to grant use immunity in a civil deposition; civil contempt judgment based on refusal to testify reversed); *Isaacs v. United States,* 256 F.2d 654 (8th Cir.

1958) (reversing criminal contempt order for witness's failure to testify; court has no authority to grant judicial use immunity to a grand jury witness).

The district court found its authority to grant a witness use immunity in *Government of Virgin Islands v. Smith,* 615 F.2d 964 (3rd Cir. 1980). But we have distinguished *Virgin Islands* as representing a "minority view" and declined to follow its holding in a case in which a district judge refused to grant judicial immunity for certain defense witnesses. *United States v. Herbst,* 641 F.2d 1161, 1168 (5th Cir. 1981). Further, we are not in this case confronted with any claim by DiBernardo and Rothstein that their constitutional rights to a fair trial and to compulsory attendance of witnesses would be denied unless D'Apice were granted use immunity, *United States v. Herbst,* 641 F.2d at 1169. Thus, not faced with these constitutional issues, we hold that the district court was without power to grant D'Apice judicial use immunity. *In re Corrugated Container Anti-Trust Litigation, supra.*

We now turn to D'Apice's contention that the prosecutor's promise of non-statutory use immunity was insufficient fully to protect him from subsequent use of his testimony. If the promise was binding at all, D'Apice argues, it was enforceable only in the Southern District of Florida, and consequently was not coextensive with the fifth amendment privilege against self-incrimination.

Although we have never specifically decided the validity and scope of a prosecutor's conferral of non-statutory immunity, we have commented on the issue. In *Dresser Industries, Inc. v. United States,* 596 F.2d 1231 (5th Cir. 1979), *cert. denied,* 444 U.S. 1044, 100 S.Ct. 731, 62 L.Ed.2d 730 (1980), we held that an alleged agreement between the plaintiff and the Securities and Exchange Commission that no government agency, including the Justice Department, would prosecute the plaintiff was unenforceable since the SEC had no authority to make such agreements:

It is well established that the federal government will not be bound by a contract or agreement entered into by one of its agents unless such agent is acting within the limits of his actual authority. *Federal Crop Ins. Corp. v. Merrill*, 332 U.S. 380, 68 S.Ct. 1, 92 L.Ed. 10 (1947); *Posey v. United States*, 5 Cir. 1971, 449 F.2d 228, 234; *Jackson v. United States*, Ct.Cl.1978, 573 F.2d 1189, 1197–98.... If the rule were otherwise, a minor government functionary hidden in the recesses of an obscure department would have the power to prevent the prosecution of a most heinous criminal simply by promising immunity in return for the performance of some act which might benefit his department. Such a result could not be countenanced....

*Furthermore, courts have held that not even a United States Attorney can bind his counterpart in another district to dismiss an indictment, United States v. Boulier*, 359 F.Supp. 165, 170–71 (E.D.N.Y. 1972), *aff'd* 2 Cir. 1973, 476 F.2d 456, *cert. denied*, 414 U.S. 832, 94 S.Ct. 171, 38 L.Ed.2d 56 (1973); *and that even prosecutors have no power to grant immunity in the absence of a statute specifically conferring it, United States v. Gorham*, 1975, 173 U.S.App.D.C. 139, 523 F.2d 1088, 1096.

*Id.* at 1236–37 (emphasis added). *See also United States v. Donahey*, 529 F.2d 831, 832 (5th Cir.), *cert. denied*, 429 U.S. 828, 97 S.Ct. 85, 50 L.Ed.2d 91 (1976) (immunity for testimony is obtainable only pursuant to the immunity statute, 18 U.S.C. §§ 6001–03 (1976)). *Cf. United States v. Weiss*, 599 F.2d 730, 734–738 (5th Cir. 1979) (discussing, without deciding, validity of non-statutory immunity). We read this case law as

suggesting that a federal prosecutor has no independent authority to confer non-statutory use immunity on a witness; if such authority were found to exist, the immunity promise may well not be binding on government attorneys outside of his district.

In the present case, the Department of Justice refused to allow the prosecutor to apply to the district court for statutory immunity because it was convinced that D'Apice's testimony would be perjurious. Later, the head of the Organized Crime Strike Force in Miami apparently took it on himself to authorize the prosecutor to offer D'Apice use immunity.[4] In subsequently instructing D'Apice not to testify in DiBernardo's case, D'Apice's attorney was mindful of this apparent conflict within the executive department as to the propriety of granting D'Apice immunity. Counsel was also conscious of the real possibility that D'Apice might be indicted in another jurisdiction [5] where he feared that the prosecutor's promise of immunity would not be binding.

■ We conclude that despite the prosecutor's promise of immunity, D'Apice validly asserted his fifth amendment privilege when he declined to testify. The dubious validity of the prosecutor's promise gave D'Apice adequate reason to believe that whatever immunity he may have received was not coextensive with his fifth amendment privilege. *Kastigar v. United States*, 406 U.S. at 453, 92 S.Ct. at 1661. Thus, D'Apice "reasonably apprehend[ed] a risk of self-incrimination" if he testified and properly invoked the privilege. *Wehling v. Columbia Broadcasting System*, 608 F.2d at 1087 n.5.[6]

---

**4.** The record does not show that the Department of Justice approved this action.

**5.** The record indicates that D'Apice might be indicted in the Southern District of New York as a result of the same investigation that led to his indictment in this case.

**6.** Our decision does not foreclose the possibility that, in a different case, a prosecutor's non-statutory immunity commitment may be held enforceable, *see, e. g., United States v. Sanderson*, 498 F.Supp. 273 (M.D.Fla.1980); *Rowe v.*

*Griffin*, 497 F.Supp. 610 (M.D.Ala.1980), nor does it preclude a finding that an informal grant of use immunity by a prosecutor in one district is binding in another district or even on the entire government. We merely hold that, given the factual background and posture of this case, D'Apice reasonably concluded that the prosecutor's immunity grant was not coextensive with his fifth amendment privilege against self-incrimination.

For the reasons we have set forth, the district court's judgment of criminal contempt is

REVERSED.