DONALD JOHN RECHTZIGEL, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 21627–80.    Filed July 26, 1982.

Donald John Rechtzigel, pro se.
*Dale L. Newland*, for the respondent.

OPINION

WHITAKER, *Judge*: Respondent determined deficiencies in petitioner's Federal income tax for 1974, 1975, 1976, and 1977, and additions to the tax under sections 6653(b)[1] and 6654 in the following amounts:

| | | Additions to tax | |
|---|---|---|---|
| Year | Deficiency | Sec. 6653(b) | Sec. 6654 |
| 1974 | $3,894.02 | $1,947.01 | $122.84 |
| 1975 | 5,421.28 | 2,710.64 | 233.90 |
| 1976 | 6,618.48 | 3,309.24 | 246.50 |
| 1977 | 7,520.69 | 3,760.35 | 267.63 |

This case is before us on respondent's motion for sanctions under Rule 104(c).[2] Respondent's primary request is that the Court dismiss the case pursuant to Rule 104(c)(3) and enter a default judgment against petitioner for the full amount of the deficiencies and the additions to the tax under both sections 6653(b) and 6654. Alternatively, respondent moves under Rule 104(c)(2) that factual allegations with respect to the fraud issue be deemed admitted and that petitioner not be allowed to support certain claims set forth in his petition; respondent would then request under Rule 104(c)(1) that the deficiencies and additions to the tax be deemed established as the amount of the underpayment for purposes of this case. Because of petitioner's refusal to comply with Court-ordered discovery, we grant the primary relief requested by respondent. The petition

---

[1] Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954 as amended, and all Rule references are to the Tax Court Rules of Practice and Procedure.

[2] Rule 104(c) provides:

(c) Sanctions: If a party * * * fails to obey an order made by the Court with respect to the provisions of Rule * * * 72 [Production of documents and things] * * * , the Court may make such orders as to the failure as are just, and among others the following:

(1) An order that the matters regarding which the order was made or any other designated facts shall be taken to be established for the purposes of the case in accordance with the claim of the party obtaining the order.

(2) An order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting him from introducing designated matters in evidence.

(3) An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the case or any part thereof, or rendering a judgment by default against the disobedient party.

(4) In lieu of any of the foregoing orders or in addition thereto, an order treating as a contempt of the Court the failure to obey any such order.

is dismissed, thereby granting judgment for respondent with respect to the deficiencies and the section 6654 additions to the tax, and a default judgment is granted in favor of respondent with respect to the section 6653(b) additions to the tax.

After receiving the notice of deficiency for the years 1974, 1975, 1976, and 1977, petitioner timely filed a petition contesting the deficiencies and the additions to the tax. The petition alleges that petitioner resides in Lime Springs, Iowa. The petition was accompanied by a request for grant of immunity[3] and an accompanying memorandum citing various cases dealing generally with the privilege against self-incrimination but not discussing how the privilege applied to this case. The petition stated no specific facts but merely alleged that petitioner's income was less than that determined by the Commissioner and that his expenses were more than allowed. It also stated that petitioner had given the Internal Revenue Service no financial information because of the possibility that such information might later be used against him in criminal proceedings and that only if he was granted immunity from later criminal prosecution would he be willing to assume the burden of proof in Tax Court. Attached to the petition were Forms 1040 for 1974, 1975, 1976, and 1977 which petitioner claimed he filed with respondent. These forms provided no information concerning petitioner's tax liabilities for those years, except that one personal exemption was claimed in each of these years, minimal amounts of interest income were reported in 3 of the years, and minimal amounts of withheld income taxes were listed and claimed as refunds in 2 of the years. On virtually every line except those relating to the aforementioned items, either "object self-incrimination" or "none" was entered.

In paragraphs 8(A) through (S) of the answer, respondent, with sufficient specificity, alleged facts which, if proven, are more than adequate to support his fraud determination. These alleged facts include specific items of income in each of the years, paid by checks which petitioner deposited or negotiated, information from Forms W–2, false Forms W–4, and the

---

[3]This Court has no jurisdiction to grant immunity. *Hartman v. Commissioner*, 65 T.C. 542, 547 (1975).

failure to file income tax returns. In paragraphs 8(T) and (V), respondent makes the conclusory allegations of fraud.[4]

Only after respondent filed a Rule 37(c) motion for an order that undenied allegations in the answer be deemed admitted did petitioner file a reply. His reply was simply a denial of all the allegations set forth in paragraph 8 of the answer.

On August 20, 1981, respondent served upon petitioner a request under Rule 72 for the production of all books, papers, records, and other data in petitioner's possession or control reflecting in the years 1974 through 1977 taxable income received by him, farm or ranching expenses incurred, and any itemized deductions. On the basis of his Fifth Amendment privilege against self-incrimination, petitioner objected to furnishing any information to respondent. On October 16, 1981, respondent filed a motion for an order compelling petitioner to produce requested documents or to impose sanctions under Rule 104. On November 6, 1981, petitioner filed with the Court a memorandum in support of his objections to respondent's motion. Again, petitioner asserted his privilege against self-incrimination but did not allege any factual basis for his claiming such privilege. By order dated November 9, 1981, the Court ordered petitioner to produce the documents requested by respondent on or before December 10, 1981. Petitioner did not comply with this order, but on December 21, 1981, filed with the Court a document alleging that respondent's attorney had stated that there was a pending criminal investigation of petitioner.

On February 1, 1982, respondent filed a motion for an order to impose sanctions under Rule 104(c). Petitioner did not appear at the hearing on this motion on February 17, 1982, during which respondent's counsel stated that no criminal investigation of petitioner was pending. By order dated February 17, 1982, the Court continued respondent's motion until the calendar call at the St. Paul, Minn., trial session of the Court on March 22, 1982, so that petitioner would have one further opportunity to produce the requested documents. This order recited that counsel for respondent in open court had stated unequivocally that there was now no criminal investiga-

---

[4]See, e.g., *Doncaster v. Commissioner*, 77 T.C. 334, 337–338 (1981).

tion pending against petitioner, and that the Court had again found that there was no basis for petitioner's continued refusal to comply with the order to produce. The order specifically admonished petitioner that unless he complied with the order to produce books and records by March 10, 1982, the Court would be disposed, at the March 22, 1982, calendar call, to grant respondent's motion to impose sanctions, and that this action would have the effect of a determination that the deficiencies and sections 6653(b) and 6654 additions to the tax asserted by respondent were correct.

Petitioner did not comply with this order. At the March 22, 1982, hearing, he appeared and again invoked the privilege against self-incrimination but would not give any factual basis for this claim except that two agents of the Criminal Investigation Division had previously investigated him. Respondent advised that there had once been a criminal investigation of petitioner for the years in issue but that the Criminal Investigation Division had declined to pursue a criminal investigation for a variety of policy reasons, and that there was at the time of the hearing no pending or threatened criminal investigation. Petitioner nevertheless declined to proceed or to produce his books and records.

## *Privilege Against Self-Incrimination*

An individual can rely on the Fifth Amendment privilege against self-incrimination as the ground for refusing to testify or furnish records if the testimony or records might tend to reveal that the individual has engaged in criminal activities, and if there is a substantial and real, rather than fanciful, risk that the individual will be prosecuted for the criminal activities that the records or testimony might touch on. *In re Corrugated Container Antitrust Litigation—Appeal of Culy*, 662 F.2d 875, 882–883 (D.C. Cir. 1981) (hereinafter *Culy*); *In re Corrugated Container Anti-Trust Litigation—Appeal of Franey*, 620 F.2d 1086, 1091 (5th Cir. 1980). Respondent's counsel assured that no criminal prosecution of petitioner was pending or threatened, and respondent has assumed that such assurance establishes that petitioner had no privilege to withhold any of the requested records. On the basis of certain recent decisions of the Courts of Appeals, however, it may be argued that Government counsel's mere statement that prosecution is

not contemplated may well be insufficient to establish that there is no *possibility* of a future criminal prosecution. See *United States v. D'Apice*, 664 F.2d 75 (5th Cir. 1981); *Culy, supra*; *In re Corrugated Container Antitrust Litigation—Appeal of Conboy*, 661 F.2d 1145, 1151 (7th Cir. 1981), cert. granted sub nom. *Pillsbury v. Conboy*, 455 U.S. ___ (1982), and cases cited therein. Here, respondent's counsel stated that as a matter of Internal Revenue Service policy, a decision against criminal prosecution had been made with respect to the years before the Court, and that representation could probably have been made more all inclusive if petitioner had requested it. Although it is far from clear, production of financial records in reliance upon such a representation might be held to be sufficient to prevent respondent from thereafter reversing the decision. See *Culy, supra* at 887 n. 27; but see *United States v. D'Apice, supra.* Where a petitioner has a genuine fear of future prosecution, he still must proceed in good faith to provide the Court with sufficient information to enable it to evaluate and protect his interests. Only in this way will the Court be in a position to assess the possibility of prosecution and thus the substantiality of petitioner's fear. In addition, the Court can consider ways in which to protect the constitutional rights while minimizing the interference with an orderly trial, thus also protecting the public interest. See, e.g., *California v. Byers*, 402 U.S. 424, 427 (1971). We are confronted here, however, with a petitioner whose aim appears to have been from the start to harass both the Government and this Court. This conclusion follows from, among other actions, petitioner's renewal at the March 22, 1982, hearing of his groundless demand for a jury trial. The Forms 1040 which he filed for these years and the vague and pointless allegations in his petition reflect the same attitude.

In this case, petitioner claimed the privilege against self-incrimination sheltered him from producing any of the records requested by respondent. The Court asked petitioner to state his basis for his fear of self-incrimination but petitioner declined to explain how the privilege applied to any or all of the requested records. He asserted that he should be the sole determiner whether the records would be incriminating and that he did not have to tell the Court the reason for his fears of self-incrimination, a position absolutely without merit. See

*Hoffman v. United States*, 341 U.S. 479, 486 (1951). By taking this course of action, petitioner prevented this Court from having a sufficient basis for reviewing the correctness of his privilege claim.

Courts have consistently held that the privilege against self-incrimination does not justify a blanket refusal to testify but can be claimed only on a selective basis in response to particular questions or requests for records. *United States v. Jones*, 538 F.2d 225 (8th Cir. 1976); *United States v. Malnik*, 489 F.2d 682, 685 (5th Cir. 1974); *In re Turner*, 309 F.2d 69 (2d Cir. 1962). Blanket claims of the privilege have been rejected because the court, not the witness, must make the ultimate determination whether a claim of privilege is justified. Only if a reviewing court is informed of the particular questions or records (or portions thereof) to which a taxpayer objects on constitutional grounds, and the specific reasons for such objections, will it be possible for the court to determine whether the witness was mistaken in his claim that the requested information might incriminate him. *United States v. Malnik, supra* at 685.

It appears from respondent's allegations in paragraph 8 of his answer that the deficiency was based primarily upon petitioner's receiving unreported income from farmers' cooperatives and teaching. These types of income-producing activities are certainly legitimate, so we are not faced here with a situation where the mere admission of involvement in an activity may be incriminating. This case involves not only deficiencies but also additions to the tax under section 6653(b), based on respondent's determination that part of the underpayments were due to fraud. Facts supporting civil fraud additions to the tax may well also support criminal tax fraud prosecutions under section 7201. Therefore, it is theoretically possible that petitioner had reason to fear that some of the records produced might be used in a Federal criminal tax prosecution, although he did not advise the Court that this was the reason for his claim of the privilege.

Respondent's request for production encompassed a wide range of records relating not only to unreported income but also to expenses and deductions, and we cannot assume that all these records might possibly tend to incriminate petitioner, especially since petitioner did not try to justify his privilege

claim other than on his overall opposition to furnishing information. Thus, petitioner's blanket claim of the privilege against self-incrimination must be rejected as unjustified. Had he brought his records before the Court, expressed his willingness to produce records not protected by the privilege, and voiced his objections on a selective and understandable basis, it could well have been a different matter. But petitioner chose to stonewall respondent by simply refusing to furnish any information whatsoever, giving no specific grounds for such refusal, even after the Court's ruling on his privilege claim.

In the language of the Ninth Circuit, petitioner was attempting to use his constitutional privilege "more as a sword than as a shield." *United States v. Carlson*, 617 F.2d 518, 520 (9th Cir. 1980). There is a "broad public interest in maintaining a sound tax system." *United States v. Lee*, 455 U.S. ___ (1982). "The federal government's power to raise revenue is its lifeblood." *United States v. Carlson, supra* at 523. Petitioner must bear the consequences of his course of action; under these circumstances, we cannot allow it to interfere with the proper functioning of the Federal tax system.

## *Rule 104(c) Sanctions*

Petitioner has twice willfully disobeyed an order of this Court to comply with respondent's request for production of documents. Respondent has moved that this refusal to comply with the Court's discovery order be dealt with through sanctions under Rule 104(c).

There is no question that this Court has authority to order dismissal of the petition, and thereby grant judgment to respondent with respect to the deficiency and the section 6654 addition to the tax. See *Eisele v. Commissioner*, 580 F.2d 805 (5th Cir. 1978), affg. an unpublished order of this Court;[5] *McCoy v. Commissioner*, 76 T.C. 1027 (1981), on appeal (9th Cir., Sept. 15, 1981). With respect to defaulting petitioner on the fraud issue[6] as a sanction under Rule 104(c)(3), we are

---

[5]See also *Lyons v. Johnson*, 415 F.2d 540 (9th Cir. 1969); *Lockwood v. Commissioner*, T.C. Memo. 1981–243.

[6]The terms "dismissal" and "default" are often used interchangeably. Texts usually treat a case as dismissed when the Court finds against the claimant; a default is found, in

without direct precedent but we see no reason why this sanction cannot be applied.

Cases under rule 37(b)(2), Federal Rules of Civil Procedure, which is analogous to Rule 104(c)(3) and from which Rule 104(c)(3) was derived, have recognized that the courts have broad discretion to order dismissal or default as a sanction against a party who has willfully refused to comply with a discovery order. E.g., *National Hockey League v. Met. Hockey Club*, 427 U.S. 639 (1976) (per curiam) (dismissal); *Trans World Airlines, Inc. v. Hughes*, 332 F.2d 602 (2d Cir. 1964) (default); see generally C. Wright & A. Miller, Federal Practice and Procedure sec. 2289 (1973), and cases cited therein at nn. 68–70. That a party's failure to comply with discovery requests may have been based on his defective assertion of the privilege against self-incrimination does not affect the courts' discretion to impose sanctions under rule 37(b)(2), Federal Rules of Civil Procedure. *Baker v. Limber*, 647 F.2d 912, 918 (9th Cir. 1981). Thus, unless there is some peculiar reason why this Court's discretion to order dismissals and defaults should be more circumscribed than the authority of other courts, the Court should be seen as having broad discretion to decide whether a party's recalcitrant behavior in a particular case warrants a finding of default.

One reason that has been advanced for limiting the Court's discretion to find a default on a fraud question is that a default judgment relieves respondent of having to introduce any actual evidence to support his fraud determination. A principle long recognized by this Court is that a judgment of fraud will not be issued unless supported by sufficient affirmative proof of fraud. The case first addressing this affirmative proof requirement was *Miller-Pocahontas Coal Co. v. Commissioner*, 21 B.T.A. 1360 (1931), in which we dismissed a taxpayer's suit for failure to prosecute and thereby found him liable for the deficiency but refused to grant judgment against him on the related fraud issue. The taxpayer had failed to appear at trial and had presented no evidence on his behalf; however, the

contrast, against the party opposing the claim. Our Rules do not in all respects follow this dichotomy. Our decisions do, however, distinguish between defaulting a petitioner with respect to matters as to which petitioner has the burden of proof (a dismissal) and those as to which respondent has the burden. See, e.g., *Doncaster v. Commissioner, supra.*

Commissioner had also presented no evidence. Because the burden of proving fraud is on the Commissioner, we held that he had not established fraud.[7]

The affirmative proof requirement does not necessarily require that evidence actually be presented at trial to establish fraud. In several cases, we found the affirmative proof requirement to have been satisfied when facts were established through deemed admissions. For example, in *Doncaster v. Commissioner*, 77 T.C. 334 (1981); *Gilday v. Commissioner*, 62 T.C. 260 (1974); and *Statler v. Commissioner*, 27 B.T.A. 342 (1932), we found fraud to have been sufficiently proven on the basis of facts properly pleaded in the answer that were deemed admitted under Rule 37(c) or its predecessor because of petitioner's failure to file a reply.[8]

We have not heretofore decided whether a default decision on the fraud issue can be entered against petitioner without, either directly or indirectly via deemed admissions, satisfying the affirmative proof requirement of *Miller-Pocahontas*.[9] However, several cases under the Federal Rules of Civil Procedure have considered the relationship between a party's burden of proof and the entry of a default judgment and have recognized that the effect of a default is to admit all well-pleaded factual

[7]An additional reason stated in *Miller-Pocahontas Coal Co. v. Commissioner*, 21 B.T.A. 1360 (1931), for our refusal to find fraud was that the statute provided that a dismissal should require affirmance of the deficiency only. We found that for this purpose, a deficiency should not be interpreted as including the fraud addition to the tax. This secondary basis for the *Miller-Pocahontas* decision has no relevance to whether default judgments can be entered under Rule 104(c) since they are not dismissals and are therefore not governed by sec. 7459(d), the successor provision to the one considered in *Miller-Pocahontas*. We note that when *Miller-Pocahontas* was decided, the Rules did not provide for default judgments.

[8]See also *Pimbley v. Commissioner*, T.C. Memo. 1982–103; and *Amato v. Commissioner*, T.C. Memo. 1977–305, in which determinations of fraud were based on deemed admissions under Rule 90(c).

[9]In *Gordon v. Commissioner*, 73 T.C. 736 (1980), we entered under Rule 123(a) a default judgment on the fraud addition to the tax. However, we carefully distinguished *Miller-Pocahontas Coal Co. v. Commissioner, supra*, as being inapplicable to the particular facts of that case because the petitioner had clearly and unequivocally stated to the Court that he would not contest the fraud addition. In dicta we suggested that the default provisions might justify our entry of a default judgment without affirmative proof in the case of mere nonappearance at trial but cautioned that the entry of default judgments in such situations could lead to increased and indiscriminate use of the fraud addition. *Gordon v. Commissioner, supra* at 742. In *Doncaster v. Commissioner*, 77 T.C. 334, 338 (1981), we remarked that nothing in *Gordon* dictates that we should require respondent to present affirmative evidence of fraud if deemed admissions are sufficient to establish fraud.

allegations of the nondefaulting party. E.g., *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978); *Nishimatsu Construction Co., Ltd. v. Houston Nat. Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975); *Trans World Airlines, Inc. v. Hughes*, 449 F.2d 51, 63 (2d Cir. 1971), revd. on other grounds 409 U.S. 363 (1973); see generally C. Wright & A. Miller, *supra* sec. 2688, at 279–283. Thus, the entry of a default judgment has the effect of establishing the nondefaulting party's right to recover to the extent that claims supported by well-pleaded facts are not controverted by facts judicially noticed or in evidence. *In re Consol. Pretrial Proceedings in Air West*, 436 F. Supp. 1281, 1285–1286 (N.D. Cal. 1977).[10]

Because our Rules authorizing default judgments are derived from the Federal Rules of Civil Procedure, our finding a default under Rule 104(c)(3) or 123(a) should have the same effect as a comparable finding by a Federal District Court under the Rules of Civil Procedure. Thus, our finding of default here has the effect of deeming admitted all respondent's factual and conclusory allegations relating to the fraud issue.[11] We examined those allegations and found them to be sufficient. We see no significant distinction for purposes of applying the *Miller-Pocahontas* affirmative proof requirement between this case and *Doncaster v. Commissioner, supra,* in which the Court granted judgment on the fraud issue on the basis of facts deemed admitted under Rule 37(c). In both situations, facts alleged by respondent are deemed to be true, and judgment for respondent is proper only if the facts deemed to be true are sufficient to show fraud.

We are not here deciding the question raised but left unanswered in *Gordon v. Commissioner*, 73 T.C. 736, 742 (1980), with respect to the Court's authority to grant default

---

[10]Even if it were determined that petitioner's claim of Fifth Amendment protection had validity in some respects, the Court is entitled to attach evidentiary weight to petitioner's silence, which further supports respondent's allegations of fraud. See *Palmigiano v. Baxter*, 425 U.S. 308 (1976).

[11]We have the authority under Rule 104(c) to strike petitioner's reply but that would be meaningless. Under Rule 37(c) the absence of a reply has the effect of a denial of the affirmative allegations of the answer, which is all that petitioner's reply accomplished. However, the necessary effect of defaulting petitioner is to deem admitted the affirmative allegations in the answer irrespective of petitioner's denial. The sanction thus converts the denial into an admission.

judgments on the fraud issue against petitioners who fail to appear at trial.[12] Here, there was no trial, rather it was a pretrial hearing on respondent's motion for sanctions which required disposition prior to trial. By not cooperating in discovery, petitioner has prevented this case from proceeding to the stage at which it is ready for trial. Thus, default is found here not because of the petitioner's inactivity in presenting his own case to the Court; rather, it is imposed as a sanction because his willful flouting of the Court's discovery order has hampered respondent's ability to develop his case. Cf. *Norman v. Young*, 422 F.2d 470, 474 (10th Cir. 1970). In this respect, it should be noted that although petitioner appeared at the hearing and protested against furnishing the records ordered to be produced, such an appearance has no effect on our decision to find default based upon his obdurate refusal to comply with the Court's orders. His appearance served merely to confirm his continued refusal without cause to cooperate, a fact already amply clear from the record. We note again petitioner's refusal to proceed unless granted a jury trial.

> *An appropriate order and decision will be entered.*

---

[12]With respect to taxpayers who file a petition but thereafter fail to proceed with their cases, respondent will normally be able to have factual allegations sufficient to prove fraud deemed admitted under Rule 37(c), 90(c), or 91(f).