LOWELL W. GUNNARSON AND ISABELL M. GUNNARSON, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Gunnarson v. Commissioner
Docket No. 11541-81.
United States Tax Court
T.C. Memo 1982-669; 1982 Tax Ct. Memo LEXIS 82; 45 T.C.M. (CCH) 147; T.C.M. (RIA) 82669; November 18, 1982
Lowell W. Gunnarson, pro se. Robert M. Hallmark, for the respondent. DAWSON
MEMORANDUM FINDINGS OF FACT AND OPINION DAWSON, Judge: Respondent determined the following deficiencies in petitioners' Federal income taxes and additions to tax: Addition to Tax
Year
Deficiency
Sec. 6653(a) [1]
1977
$2,161.07
$108.05
1978
2,541.11
127.06
In amendments to his answer claiming increases in petitioners' deficiencies and additions to tax, respondent has claimed total deficiencies and additions to tax as follows: Addition to Tax
Year
Deficiency
Sec. 6653(a)
1977
$4,586.07
$229.30
1978
4,749.11
237.46
The issues presented for decision are: (1) Whether petitioners have a valid claim to a privilege against self-incrimination under the Fifth Amendment to the Constitution of the United States; (2) whether personal service *85 income assigned by petitioners to a family trust is taxable to them individually; (3) whether passive income reported as earned by a family trust is taxable to petitioners individually; (4) whether petitioners are entitled to deduct $2,500 paid for the family trust materials; and (5) whether petitioners are liable for the additions to tax under section 6653(a). FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and attached exhibits are incorporated herein by reference. When they filed their petition in this case, the petitioners resided in Lakewood, Colorado. They filed a joint Federal income tax return for 1977 with the Internal Revenue Service Center at New Orleans, Louisiana, and a joint Federal income tax return for 1978 with the Internal Revenue Service Center at Ogden, Utah. On June 20 and 21, 1977, petitioners Lowell W. Gunnarson ("Lowell") and Isabell M. Gunnarson ("Isabell") signed a series of documents purporting to create the Lowell M. Gunnarson Family Trust ("Trust"). The documents included a "Declaration of Trust" which was signed by Lowell as grantor-creator and by Isabell and Linda M. Miller ("Linda") as *86 trustees. Also included were certificates of beneficial interest bearing the logo of Educational Scientific Publishers ("E.S.P."). The declaration of trust provided: The declared purpose of the Trustees of THIS TRUST shall be to accept rights, title and interest in and to real and personal properties, whether tangible or intangible, conveyed by the creator hereof and grantor hereto to be the corpus of THIS TRUST. Included therein is the exclusive use of his lifetime services and all of his earned remuneration accruing therefrom, from any current source whatsoever, so that Lowell W. Gunnarson can maximize his lifetime efforts through utilization of his Constitutional Rights; for the protection of his family in the pursuit of his happiness through his desire to promote the general welfare, all of which Lowell W. Gunnarson feels he will achieve because they are sustained by his RELIGIOUS BELIEFS. In addition to all remuneration from his lifetime services, Lowell transferred to the Trust all of his real and personal property. By the declaration of trust the trustees were empowered to do anything any individual could legally do with respect *87 to the management of the trust property, and the trustees agrees to make "distributions of portions of the proceeds and income as in their discretion, and according to the minutes, should be made." Affirmative action could be taken only by a majority vote of the trustees. Beneficial interest in the Trust was divided into 100 units. Initially, Lowell received a certificate representing all 100 units, but this certificate was subsequently cancelled.Certificates of beneficial interest were then transferred to various members of the Gunnarson family in the following amounts: 50 units to Isabell, 15 units to Luayne M. Gunnarson, five units each to Linda, Lance M. Gunnarson, and Leslie M. Gunnarson, and 10 units each to Ila S. Gunnarson and Gladys M. Goebel. Lowell subsequently became a trustee and executive manager of the Trust. On March 3, 1982, about three weeks before this case was tried, Lowell ceased to be a trustee of the Trust. The certificates of beneficial interest provided that the "[b]enefits hereby conveyed consist solely of the emoluments as distributed by action of the Trustees and nothing more." The declaration of trust further stated that ownership of a beneficial *88 certificate does not entitle the holder to any legal title or undivided interest in the trust property. In 1977, petitioners earned $25,502.92 in personal service income and received $4,219.43 in "consulting fees" from the Trust. On their 1977 income tax return they included in income the $4,219.43 in consulting fees, but subtracted $13,871.06 of income which they had transferred to the Trust. Petitioners also deducted $2,500 paid for "estate planning materials to maintain and conserve assets." In 1978, petitioners earned $22,193.35 in personal service income, all of which was transferred to the Trust. Petitioners also received $8,120 in "consulting fees" from the Trust. On their 1978 income tax return they adjusted their income by subtracting the $22,193.35 assigned to the Trust, but included the consulting fees in income. The Trust filed a 1977 fiduciary income tax return based on a fiscal tax year ended May 31, 1978. The return reported $24,876.66 in income from "contract from trustees." The Trust deducted depreciation on a mobile home and other property owned by petitioners prior to the creation of the Trust, and also claimed as administrative deductions expenses for *89 utilities, travel, medical and dental care, telephone bills, and repair and maintenance of housing. Enclosed with this fiduciary return was a letter signed by Lowell as trustee requesting that the tax owed by the Trust be deducted from the refund claimed on petitioners' personal income tax return. The Trust filed a 1978 fiduciary income tax return for the fiscal tax year ended May 31, 1979. The Trust reported a capital gain of $17,639.06 and other income of $15,078.37. The capital gain resulted from sales in 1978 of certain real property and other assets owned by Lowell prior to the creation of the Trust. The other income was derived from nominee payments made by Lowell and Isabell. The Trust claimed as administrative deductions expenses for housing, utilities, medical and dental care, telephone bills, and books and periodicals. Also claimed was a deduction for $6,800 that was distributed pro rata to the holders of beneficial certificates. In his statutory notice of deficiency respondent determined that the amounts reported on petitioners' 1977 and 1978 returns as nominee payments to the Trust constituted income to them. The income assigned to the Trust was therefore included *90 in petitioners' income, and the amounts paid by the Trust to petitioners as consulting fees were subtracted from income. Respondent disallowed the deduction in 1977 of $2,500 paid for estate planning materials. Because this adjustment caused petitioners' itemized deductions for 1977 to fall below the zero bracket amount, respondent increased taxable income by only $1,022.28.Respondent also determined additions to tax under section 6653(a). After the petition and answer had been filed in this case, respondent filed an amendment to his answer claiming an increased deficiency in petitioners' income tax for 1978 in the amount of $2,208. The increase in deficiency was based upon inclusion in petitioners' income of $17,639.06 in capital gains originally reported on the 1978 fiduciary return filed by the Trust. The addition to tax under section 6653(a) was increased by $110.40 to reflect the increase in deficiency. In a second amendment to his answer, respondent claimed that petitioners' income for 1977 was understated by $24,876.66, the amount reported on the 1977 fiduciary return for the fiscal year ended May 31, 1978, as income to the Trust from "contract from trustees." The notice *91 of deficiency had added to petitioners' income for 1977 only $13,871.06, the amount reported on petitioners' individual tax return as nominee payments to the Trust. Accordingly, respondent increased petitioners' income for 1977 by $11,005.62, increasing the deficiency in tax by $2,425 and the addition to tax by $121.25. OPINION Petitioners have the burden of proving that the deficiencies and additions to tax determined by respondent are incorrect. Welch v. Helvering,290 U.S. 111, 115 (1933); Rule 142(a), Tax Court Rules of Practice and Procedure.[2] Respondent, however, bears the burden of proof with respect to the increases in deficiencies in tax claimed in his amendments to his answer. Rule 142(a). On March 17 and 18, 1982, Linda and Isabell were served with subpoenas duces tecum ordering them to appear before this Court and to bring with them all documents pertaining to the Trust. They both claimed that the subpoenaed records were in the custody of Lowell. Lowell was served *92 with an identical subpoena on March 20. He claimed, however, that the trustees had control of the documents. At trial Lowell testified that he relinquished physical possession of the documents on March 3. He refused to comply with the Court's directive that he respond to the subpoena and refused to disclose who had physical control of the documents, claiming a privilege against self-incrimination under the Fifth Amendment to the Constitution. An individual can rely on the privilege against self-incrimination only if the risk of prosecution is real and substantial and not remote and speculative. Rechtzigel v. Commissioner,79 T.C. 132, 136 (1982); Reiff v. Commissioner,77 T.C. 1169, 1174 (1981); McCoy v. Commissioner,76 T.C. 1027, 1029 (1981), on appeal (9th Cir. Sept. 15, 1981). Lowell submitted a photocopy of a page from the "IR Manual Supplement," which provided that family estate trust returns should be reviewed for criminal potential. Lowell also claimed that as a member of the National Commodity and Barter Association, he *93 was the target of a Grand Jury investigation. Respondent's counsel replied that petitioners were not to his knowledge under any criminal investigation. Furthermore, respondent submitted an affidavit in which the attorney from the Department of Justice conducting a Grand Jury investigation in Colorado declared that neither the National Commodity and Barter Association nor petitioners are the subject or target of his or any other Grand Jury investigation to his knowledge. This Court is satisfied that petitioners are not under criminal investigation and that there is no real or substantial risk they will be prosecuted for criminal activities relating to the Trust. Consequently, we find Lowell's Fifth Amendment claim to be groundless. [3]
We turn, then, to the tax issues presented by the family trust arrangement maintained by petitioners. The first issue is whether the personal service income transferred to the Trust is taxable to the Trust or to petitioners. Respondent contends that petitioners' *94 anticipatory assignment of income does not operate to shift the incidence of taxation from them to the Trust. [4] In view of the long series of cases concerning similar family trust arrangements, all of which have held such assignments of income to be ineffective, there is no doubt that respondent is correct. Gran v. Commissioner,664 F.2d 199 (8th Cir. 1981) affg. T.C. Memo. 1980-558; Vnuk v. Commissioner,621 F.2d 1318 (8th Cir. 1980), affg. T.C. Memo. 1979-164; Vercio v. Commissioner,73 T.C. 1246 (1980); Wesenberg v. Commissioner,69 T.C. 1005 (1978). It is a elementary principle of our tax system that individuals cannot escape taxation by diverting *95 income to some other entity through contractual arrangements. United States v. Basye,410 U.S. 441 (1973); Lucas v. Earl,281 U.S. 111 (1930). Petitioners have offered no evidence distinguishing the instant case from the long line of cases applying this principle to family trust agreements. Accordingly, the amounts shown on petitioners' individual tax returns for 1977 and 1978 as nominee payments to the Trust are treated as income to petitioners. Respondent alleges in the amendment to his answer that an additional $11,005.60 should be treated as income to petitioners in 1977 because the fiduciary return listed as income from the "contract from trustees" a total of $24,876.66. The notice of deficiency took into account only $13,871.06 reported on petitioners' individual return as assigned to the Trust. Respondent has failed to carry his burden of proving that the additional $11,005.60 was income earned by petitioners in 1977. Rule 142(a). The Trust was created in June 1977, and its fiscal tax year ran until May 31, 1978.Petitioners earned a total of $25,502.92 in personal service income between January and December 1977. It is unlikely *96 that $24,876.66 of this amount was assigned to the Trust after June of that year. The additional $11,005.60 more likely derived from income earned by petitioners between January and May, 1978. As such, this additional $11,005.60 is part of the $22,193.35 reported on petitioners' 1978 return as transferred to the Trust and has already been included in petitioners' income for that year. Therefore, petitioners' tax liability for 1977 stands as originally determined in the notice of deficiency. The second issue concerns the tax consequences of the passive income reported as income to the Trust in 1978. Because respondent first raised the passive income issue in an amendment to his answer, he bears the burden of proof on such issue. Rule 142(a). Respondent contends that Lowell as grantor of the Trust should be treated as owner of the entire Trust under the grantor trust provisions of sections 671 through 677, thereby requiring attribution of the Trust's passive income to petitioners. We agree with respondent and we think he has met his burden of proof with respect to this issue. In general, *97 the grantor trust provisions require that the grantor of a trust be treated as the owner of that portion of the trust over which he retains certain powers or rights as described in sections 673 through 677. Where the grantor is treated as owner of any portion of the trust, all items of income, deductions, and credits attributable to that portion are reallocated to the grantor to the extent that such items would be taken into account in computing the grantor's individual tax liability. Section 671. Section 677(a) provides in part that the grantor shall be treated as the owner of any portion of a trust whose income may be distributed or accumulated for future distribution to the grantor or the grantor's spouse without the consent of an adverse party. The declaration of trust executed by Lowell as grantor gave the trustees the power to distribute income in their discretion. The certificates of beneficial interest provided that the holder's interest consists "solely of the emoluments as distributed by the trustees and nothing more." Thus, it was within the power of the trustees to distribute all the income to Lowell or Isabell. If this power was exercisable by Lowell, the grantor, *98 without the approval of an adverse party, the passive income reported as earned by the Trust would be taxable to petitioners. Section 672 defines "adverse party" as "any person having a substantial beneficial interest in the trust which would be adversely affected by the exercise or nonexercise of the power which he possesses respecting the trust." Under the declaration of trust in this case, the trustees could make decisions by majority vote. The original trustees signing the declaration were Isabell and Linda, both of whom held certificates of beneficial interest in the Trust. However, Lowell signed as trustee and executive manager on the fiduciary returns filed by the Trust. He retained his trustee status until March 1982. Despite her status as trustee and her interest in the Trust, Isabell cannot be considered an adverse party. Section 677 provides that the grantor shall be treated as the owner of any portion of a trust whose income may, in the discretion of the grantor or a nonadverse party or both, be distributed or accumulated for distribution to the grantor's spouse. The grantor's *99 wife cannot be treated as an adverse party with respect to distributions for her benefit. This Court held in Vercio v. Commissioner,supra at 1258-1259, that the spouse should not be treated as an adverse party for purposes of section 677. This conclusion was most recently reaffirmed in Luman v. Commissioner,79 T.C. No. 54 (November 18, 1982). See also section 1.677(a)-1(b)(2), Income Tax Regs.
For the taxable years in issue, Lowell and Isabell constituted a majority of the trustees and together possessed the power to distribute the trust income in their discretion. Income could thus be distributed to either or both of them without the consent of Linda, the other trustee. Accordingly, the passive income reported as earned by the Trust from the sale of property in 1978 is properly taxable to Lowell individually under sections 671 and 677. See, e.g., Vnuk v. Commissioner,supra;Luman v. Commissioner,supra;Vercio v. Commissioner,supra;Wesenberg v. Commissioner,supra. *100 The next issue concerns the deductibility of the $2,500 allegedly paid for "estate planning materials to maintain and conserve assets." There is no evidence in the record indicating the specific nature of this expense other than the above characterization of the expense on petitioners' return. Both parties assumed in their arguments that the expense related to the purchase of the family trust materials from E.S.P. Respondent argues that this expense is a nondeductible personal expense. Petitioners contend that the expenditure is deductible under either section 212(2) as an expense paid for the management, conservation, or maintenance of income-producing property, or under section 212(3) as an expense paid in connection with the determination, collection, or refund of taxes. This Court has consistently held that the cost of creating family trusts, of the type involved herein is, as a general rule, not deductible under section 212. See Luman v. Commissioner,supra;Epp v. Commissioner,78 T.C. 801 (1982); Contini v. Commissioner,76 T.C. 447 (1981). *101 Rather, expenses for planning one's personal and family affairs, such as establishing trusts for family members are making gifts, and nondeductible personal expenditures within the meaning of section 262. Luman v. Commissioner,supra;Epp v. Commissioner,supra.In the absence of any evidence indicating that the expenditure was made for deductible purposes, petitioners are not entitled to deduct this amount. Finally, we must decide whether petitioners are liable for the additions to tax under section 6653(a). Section 6653(a) provides for an addition to tax of five percent of the underpayment "[i]f any part of any underpayment * * * of any [income] tax * * * is due to negligence or intentional disregard of rules and regulations." Petitioners have the burden of proving that the additions to tax determined by respondent in the notice of deficiency do not apply. Bixby v. Commissioner,58 T.C. 757, 791 (1972); Rule 142(a). The imposition of the additions to tax for negligence has been upheld time and again in cases involving *102 the use of family trusts. E.G., Vnuk v. Commissioner,supra;Luman v. Commissioner,supra;Vercio v. Commissioner,supra;Wesenberg v. Commissioner,supra. Petitioners knew, or should have known if they had sought independent tax advice, that they could not avoid taxation by assigning income and property to this type of family trust. We have previously mentioned several cases holding assignments of income to such trusts ineffective and holding individuals liable under the grantor trust provisions. A number of cases have also held similar family trust arrangements to be mere shams devoid of economic reality. See, e.g., Markosian v. Commissioner,73 T.C. 1235 (1980); Basham v. Commissioner,T.C. Memo. 1980-545; Antonelli v. Commissioner,T.C. Memo. 1980-544.
The manner in which petitioners viewed their own trust arrangement is exemplified by their lack of adherence to some of the provisions in the declaration of trust. By the declaration, Lowell assigned to the Trust all remuneration accruing from his lifetime services. Had he taken this provision *103 seriously, the amounts paid to him by the Trust as consulting fees would have been automatically reassigned to the Trust.His failure to recognize the Trust as a separate entity is evidenced also by his request that the tax owed by the Trust be deducted from the refund claimed on his individual return. In view of these facts, we find it "difficult to believe that he envisioned the Trust as anything other than a flagrant tax avoidance scheme." Wesenberg v. Commissioner,supra at 1015. As in previous cases, we find it appropriate here to reiterate what we said in Harris v. Commissioner,T.C. Memo. 1981-46: In our view, a prudent individual would have endeavored to obtain independent legal and tax advice before attempting to make such an all-encompassing (though ineffective) disposition of all of his or her assets, including as here, the very means of livelihood. To anyone (and we would include petitioners) not incorrigibly addicted to the "free lunch" philosophy of life, the entire scheme had to have been seen as a wholly transparent sham.* * * Accordingly, we hold that petitioners are liable for the additions to tax under section 6653(a) *104 determined by respondent in the notice of deficiency. It follows that petitioners are liable for the additional addition to tax in 1978 as asserted by respondent. Section 6653(a)(1). To reflect our conclusions and other adjustments, [5]
Decision will be entered under Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the taxable years in issue, unless otherwise indicated.↩
2. All references to a Rule are to the Tax Court Rules of Practice and Procedure.↩
3. Petitioners general assertion that their Fourth Amendment rights have been violated is without merit. See Edwards v. Commissioner,680 F.2d 1268↩ (9th Cir. 1982).
4. Respondent argues in the alternative that the Trust is a sham and should be disregarded for tax purposes, thereby requiring that all income reported by the Trust be taxed to petitioners. Because of our decision below, we do not reach this issue.↩
5. Petitioners assert on brief that they have not been given credit for income taxes withheld from their wages in 1977 and 1978. However, it appears that they received tax refunds for each year. There is, of course, no merit to their argument that the district director and revenue agent conspired in violation of section 7214(a)(2) "to collect a greater amount of tax than is owed by the petitioners."↩