WESTENT, INC., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Westent, Inc. v. Commissioner
Docket No. 2404-74.
United States Tax Court
T.C. Memo 1983-553; 1983 Tax Ct. Memo LEXIS 224; 46 T.C.M. (CCH) 1341; T.C.M. (RIA) 83553; September 12, 1983. Peter D. Bakutes and Steven R. Guest, for the respondent. DAWSON
MEMORANDUM OPINION DAWSON, Chief Judge: This case is presently before the Court on respondent's Motion for Summary Judgment filed pursuant to Rule 121. [1] It is related to, but not presently consolidated with, Nicholas Guercio and Victoria Constantine (Formerly Guercio) v. Commissioner, Docket No. 4098-74, and Edward Charles and Ruth Charles v. Commissioner, Docket No. 4099-74, which are also decided this day. See T.C. Memo. 1983-554 and T.C. Memo. 1983-555. Respondent determined the following deficiencies in petitioner's Federal income taxes and additions to tax: Taxable Year
Addition to Tax
Ended
Deficiency
Section 6653(b) [2]
October 31, 1967
$4,417.31
$2,208.66
October 31, 1968
18,999.34
9,499.67
October 31, 1969
16,528.78
8,264.39
October 31, 1970
38,947.16
19,473.58
*226 At issue are (1) whether respondent's determination of the deficiencies should be sustained and (2) whether respondent has established by clear and convincing evidence that part of the underpayment of income tax for each of the taxable years ended October 31, 1967 through October 31, 1970 was due to petitioner's fraud with intent to evade tax. The resolution of the second issue will decide whether the deficiencies for the taxable years ended October 31, 1967 through October 31, 1969 [3] may be assessed pursuant to the false return exception to the general 3-year statute of limitations. [4] See sections 6501(a) and (c)(1). *227 On February 15, 1983, respondent served petitioner with a request for admission pursuant to Rule 90. However, petitioner failed to respond to the request. Accordingly, each matter in the request is deemed admitted and conclusively established for purposes of this case. Rule 90(c) and (e); Freedson v. Commissioner,65 T.C. 333, 335 (1975), affd. 565 F.2d 954 (5th Cir. 1978). The pertinent facts are summarized below. Facts Deemed Admitted
At the time it filed the petition in this case, petitioner was a California corporation whose principal place of business was San Francisco. Petitioner filed Federal income tax returns (forms 1120) for the taxable years ended October 31, 1967 through October 31, 1970 with the Internal Revenue Service Center in Ogden, Utah. The principal adjustment to income in this case involves unreported income received by petitioner during the years in issue. We will therefore describe in detail the circumstances surrounding the receipt of that income as well as petitioner's attempt to conceal it. During the years in issue, the record ownership of petitioner did not reflect its actual ownership. The use of nominees *228 was intended to conceal the true owners' actual interests in the corporation. As we shall see, it was also intended to conceal the receipt of unreported cash by petitioner and the distribution of that case to the corporation's true owners. Petitioner's sole business activity during the years in issue was the ownership and operation of the Mocambo, a nightclub-bar located on Powell Street in San Francisco. The Mocambo sold alcoholic, as well as non-alcoholic, drinks to its patrons and received receipts primarily in the form of cash. As an attraction it offered "dancing" by semi-nude and nude female performers. The Mocambo was one of the first establishments in the United States to offer this type of entertainment, and it attracted a large number of tourists as well as regular local patrons. As a consequence, the Mocambo was able to set prices, establish drink minimums, and attach other conditions to admission at its sole and competitively-unrestricted discretion. Pursuant to policies established by petitioner, female employees of the Mocambo regularly solicited the purchase of drinks from male patrons. The price charged for each "bar girl" drink averaged $5 (whether or not *229 alcoholic) and $30 to $50 or more for a standard size bottle of champagne. The female employees were paid $1 from the sale of such drinks and one-half of the proceeds from the sale of champagne, and the balance was retained by the Mocambo. During the years in issue the Mocambo was open sixteen hours per day (10 a.m. to 2 a.m.), seven days per week. Each day of operation was divided into a day shift and a night shift of approximately equal duration. On the average, no fewer than 20 patrons were present at the Mocambo at any given time during the day shift and no fewer than 40 patrons were present at any given time during the night shift. All sales at the Mocambo were "rung up" on the cash register and the proceeds placed in the cash drawer. At the end of each shift the cash register was totaled, its contents were removed, and the receipts were reconciled to the cash register tape. The tape was removed from the cash register and associated with the receipts. A recapitulation sheet, reflecting the total proceeds for the shift as well as amounts paid out of the cash register, was then prepared. Finally, the cash, the cash register tape, and the recapitulation sheet were placed *230 in a safe in a basement office located on the premises of the Mocambo. Petitioner's cash receipts journal and the income (sales) account of its general ledger were prepared by an accountant directly from the aforementioned cash register tapes and recapitulation sheets. The accountant verified petitioner's gross income (for both Federal income tax and book purposes) by reconciling the tapes and sheets to the bank deposits made to petitioner's account. However, the true owners of petitioner withheld from the accountant the cash register tapes and recapitulation sheets for one of the two daily shifts at the Mocambo. This practice was followed for the purpose of underreporting substantial portions of petitioner's receipts on its Federal income tax returns. In order to conceal their deception, the true owners deposited to petitioner's bank account only the receipts reflected on the tapes and sheets that were actually furnished to the accountant. The cash register tapes and the recapitulation sheets that were withheld from the accountant, i.e., those for the other daily shift at the Mocambo, as well as the related receipts themselves, were retained in the safe in the basement office. *231 Every Monday evening during the years in issue, petitioner's true owners assembled in the office, compared the skimmed cash for the preceding seven days with the daily records thereof, and divided the cash according to their respective ownership interests in petitioner. Immediately thereafter the seven secret cash register tapes and the seven secret recapitulation sheets were burned in a waste paper basket in order to destroy all documentation of the existence and the dollar amount of the skimmed cash. The gross receipts reported on petitioner's Federal income tax returns for the years in issue were based solely on the receipts shown on its books and records and therefore included the receipts of only one of the two daily shifts at the Mocambo. Receipts in the following amounts were omitted from petitioner's books and records pursuant to the scheme described above: Taxable Year
Ended
Amount
October 31, 1967
$28,271.55
October 31, 1968
35,856.60
October 31, 1969
41,143.24
October 31, 1970
85,504.20
Consequently, petitioner's gross income, as reported on its Federal income tax returns for the years in issue, was understated by those amounts. This *232 understatement of gross income, as well as the underpayment of tax resulting therefrom, was fraudulent with intent to evade tax. On its Federal income tax returns for the years in issue, petitioner deducted all expenses (including cost of goods sold) for those years, rather than just the expenses (including cost of goods sold) allocable to the portion of its gross receipts that it actually reported in income. Petitioner did not incur a net operating loss (as it claimed it did) for the taxable year ended October 31, 1967. It is therefore not entitled to a net operating loss carryover from that year to its taxable year ended October 31, 1968. On its income tax returns for the taxable years ended October 31, 1967 and October 31, 1968, petitioner claimed deductions in the amounts of $1,000 and $4,050, respectively, for compensation allegedly paid to a female by the name of London. However, at no time during either of those years did that individual provide employment services for petitioner. Accordingly, amounts which may have been paid to her in those years do not qualify as ordinary and necessary business expenses and are not deductible by petitioner. On its Federal *233 income tax returns for the taxable years ended October 31, 1967 through October 31, 1970, petitioner reported tax liabilities of $0, $430.90, $1,654.35, and $2,514.26, respectively. However, its true tax liabilities for those years were actually $4,417.31, $19,430.24, $18,183.13, and $41,461.42, respectively. Thus, petitioner underreported its true tax liabilities for the taxable years ended October 31, 1967 through October 31, 1970 by $4,417.31, $18,999.34, $16,528.78, and $38,947.16, respectively. Part of the underpayment of Federal income tax for each of the taxable years ended October 31, 1967 through October 31, 1970 was due to petitioner's fraud with intent to evade tax. Disposition of Respondent's Motion
Rule 121(a) provides that a party may move for summary judgment upon all or any part of the legal issues in controversy. However, the moving party must prove that there is no genuine issue as to any material fact and that he is entitled to judgment as a matter of law. Rule 121(b). See Adickes v. Kress & Co.,398 U.S. 144, 157 (1970); Gulfstream Land & Development v. Commissioner,71 T.C. 587, 596 (1979). In deciding a motion for *234 summary judgment, the Court "must resolve all ambiguities and draw all reasonable inferences in favor of the party against whom summary judgment is sought * * * with the burden on the moving party to demonstrate the absence of any material factual issue genuinely in dispute." Heyman v. Commerce and Industry Insurance Co.,524 F.2d 1317, 1320 (2d Cir. 1975). Given the facts which have been conclusively established pursuant to Rule 90, and for the reasons which follow, we think there remains no genuine issue as to any material fact and that a decision in respondent's favor may be rendered as a matter of law. Issue 1. Deficiencies
Petitioner derived income from the sale of drinks at the Mocambo during each of the years in issue which it did not report on its Federal income tax returns for those years. It is perfectly clear that such income is taxable and that petitioner should have reported it. Section 61(a). It is equally clear that deductions are a matter of legislative grace and that a taxpayer may claim a deduction only if he is entitled to it. New Colonial Ice Co. v. Helvering,292 U.S. 435, 440 (1934). Here it is established that *235 petitioner is not entitled to certain deductions which it claimed on its income tax returns for the taxable years ended October 31, 1967 and October 31, 1968 and which respondent disallowed. In view of the foregoing, we sustain respondent's determination that there are deficiencies in petitioner's Federal income taxes for the taxable years ended October 31, 1967 through October 31, 1970 as set forth in the notice of deficiency. Issue 2. Fraud
The principal issue in this case is whether any part of the underpayment of tax for each of the taxable years ended October 31, 1967 through October 31, 1970 was due to fraud with intent to evade tax within the meaning of section 6653(b). Whether fraud exists is a question of fact to be decided after an examination of the entire record. Stratton v. Commissioner,54 T.C. 255, 284 (1970), modified on another issue 54 T.C. 1351 (1970). Respondent bears the burden of establishing fraud, and he must prove it by clear and convincing evidence. Section 7454(a); Rule 142(b). See, e.g., Stone v. Commissioner,56 T.C. 213, 220 (1971); Otsuki v. Commissioner,53 T.C. 96, 105 (1969). *236 To establish fraud respondent must show that the taxpayer intended to evade taxes, which he knew or believed he owed, by conduct intended to conceal, mislead, or otherwise prevent the collection of such taxes. Stoltzfus v. United States,398 F.2d 1002, 1004 (3d Cir., 1968); Webb v. Commissioner,394 F.2d 366, 377-378 (5th Cir. 1968), affg. a Memorandum Opinion of this Court; Powell v. Granquist,252 F.2d 56, 60 (9th Cir. 1958); Acker v. Commissioner,26 T.C. 107, 111-112 (1956). Such intent may be proved by facts deemed admitted pursuant to the Rules of the Court. Marcus v. Commissioner,70 T.C. 562, 577 (1978), affd. without published opinion 621 F.2d 439 (5th Cir. 1980); Doncaster v. Commissioner,77 T.C. 334, 337 (1981); Gilday v. Commissioner,62 T.C. 260 (1974); see Freedson v. Commissioner,65 T.C. at 335; cf. Rechtzigel v. Commissioner,79 T.C. 132, 142-143 (1982), affd. per curiam 703 F.2d 1063 (8th Cir. 1983). In our view, the facts which have been conclusively established pursuant to respondent's *237 request for admission clearly demonstrate that petitioner fraudulently underpaid its taxes during the years in issue. We think the following facts are particularly persuasive. First, petitioner failed to report significant amounts of income derived from the sale of drinks at the Mocambo during each of the years in issue. it is well established that a consistent pattern of underreporting substantial amounts of income over a period of several years is a strong indicium of fraud. Holland v. United States,348 U.S. 121, 139 (1954). Second, the record ownership of petitioner did not reflect its actual ownership. The use of nominees was intended to conceal both the skimming of the corporation's receipts by its true owners and its failure to report those receipts for Federal income tax purposes. Third, each day's income records for one of the two shifts at the Mocambo were withheld from petitioner's accountant. In order to prevent the accountant from discovering the deception, only the receipts reflected on the records which were actually furnished to him were deposited to petitioner's bank account. Fourth, the income records which were not furnished to petitioner's *238 accountant were periodically burned in order to destroy all evidence of both the skimming operation and the unreported income. Destruction of records is one of the classic indicia of fraud. Spies v. United States,317 U.S. 492, 499 (1943). Fifth, petitioner's unreported income was secretly divided among petitioner's true owners on a weekly basis according to their respective ownership interests in the corporation. In view of the foregoing, we hold that petitioner is liable for the additions to tax under section 6653(b) as set forth in the notice of deficiency. Accordingly, assessment of the deficiencies for the taxable years ended October 31, 1967 through October 31, 1969 is not barred by the statute of limitations. See footnote 3 and the accompanying text. To reflect our conclusions, An appropriate order and decision will be entered.
Footnotes
1. All Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as amended and in effect during the taxable years in issue.↩
3. There is no issue concerning the statute of limitations for the taxable year ended October 31, 1970 because the notice of deficiency was issued within three years of the statutory due date for that year's return. See sections 6501(b)(1) and 6503(a)(1). ↩
4. In the alternative respondent contends that the deficiencies for the taxable years ended October 31, 1967 and October 31, 1968 may be assessed pursuant to the 6-year statute of limitations. See section 6501(e)(1).↩