MARY E. SWINGLER, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent.
Swingler v. Commissioner
Docket No. 23250-88
United States Tax Court
T.C. Memo 1990-437; 1990 Tax Ct. Memo LEXIS 454; 60 T.C.M. (CCH) 526; T.C.M. (RIA) 90437; August 14, 1990, Filed *454 An appropriate order and decision will be entered for the respondent. Mary E. Swingler, pro se. James A. Kutten, for the respondent. WHALEN, Judge. WHALEN
MEMORANDUM FINDINGS OF FACT AND OPINION This case is before the Court to decide whether it should be dismissed, on respondent's motion, for petitioner's failure to properly prosecute it or as a sanction for petitioner's failure to provide the discovery requested by respondent and ordered by the Court. It is also before the Court to decide respondent's motion for damages under *455 section 6673. (All section references are to the Internal Revenue Code, as amended.) FINDINGS OF FACT Respondent determined a deficiency in petitioner's income tax for calendar year 1984 in the amount of $ 132,694.17. He also determined the following additions to tax: an addition pursuant to section 6651(a)(1) in the amount of $ 33,172.03 for failure to file a timely return; an addition pursuant to section 6653(a)(1) in the amount of $ 6,634.71, and an addition to tax pursuant to section 6653(a)(2) in the amount of 50 percent of the interest due on $ 132,688.15, on the ground that the underpayment of tax was due to negligence; and an addition to tax pursuant to section 6661(a) in the amount $ 33,173.54 on the ground that the underpayment was attributable to a substantial understatement of tax. In computing the subject deficiency, respondent made three principal adjustments to petitioner's return. First, he increased petitioner's income in the amount of $ 215,136.04, consisting of the amount realized from certain transactions reported on Schedule D, Capital Gains and Losses, plus a $ 3,000 capital loss deduction claimed by petitioner from the transactions. In effect, respondent *456 disallowed the bases claimed by petitioner in the securities reported on Schedule D. The notice of deficiency describes the reason for this adjustment as follows: Since you did not verify the cost or the date acquired for any of the stock transactions on your 1984 tax return, we have disallowed the cost and changed all the transactions to short-term. Thus, your taxable income for 1984 has been increased $ 215,136.04. See computation on Schedule II.
Petitioner's Schedule D reports approximately 56 securities transactions from which the aggregate amount realized is $ 212,718.54 and the aggregate cost or other basis is $ 258,068.85. Petitioner reported the difference between these amounts, $ 45,350.31, as a net capital loss, of which $ 41,093.59 was reported as a net short-term capital loss and $ 4,256.72 as a net long-term capital loss. She combined each of these amounts with a capital loss carryover from prior years and claimed $ 3,000 of the total short-term loss as a deduction for 1984. The following is a summary of the securities transactions reported on petitioner's Schedule D: Amount
Realized
Basis
Loss
Gain
Combined
Short Term
Stocks
122,187.24
164,628.32
(42,441.08)
(42,441.08)
Stocks
21,053.36
18,288.55
2,764.81
2,764.81 Calls 7,867.40
15,313.72
( 7,446.32)
( 7,446.32)
Calls 36,313.85
23,721.37
12,592.48
12,592.48 Puts 5,475.91
12,535.63
( 7,059.72)
( 7,059.72)
Puts 2,453.74
1,957.50
496.24
496.24 195,351.50
236,445.09
(41,093.59)
Short-term loss carryover
(11,824.15)
Net short-term loss reptd.
(52,917.74)
Long Term
Stocks
17,367.04
21,623.76
( 4,256.72)
(  4,256.72)
17,367.04
21,623.76
(  4,256.72)
Long-term loss carryover
(  2,513.88)
Net long-term loss reptd.
(  6,770.60)
Total
212,718.54
258,068.85
(45,350.31)
*457 We note that if the aggregate amount realized from the transactions reported on Schedule D, $ 212,718.54, is increased by $ 3,000, the result is $ 215,718.54, which is $ 582.50 more than the $ 215,136.04 adjustment computed by respondent. The record does not explain why respondent used the lower amount as the adjustment. Respondent's second principal adjustment was to increase petitioner's taxable income by $ 58,021.70 to reflect unexplained deposits made during 1984 into eight bank accounts which petitioner maintained. The notice of deficiency explains the second adjustment as follows: In the absence of adequate records, your taxable income for the taxable year 1984 is figured by reference to bank deposits and cash payments plus personal and other nondeductible expenditures. Accordingly your reported taxable income is increased $ 58,021.70. See computation on Schedule I.
Schedule I of the notice of deficiency shows the following computation: Bank
Account No.
Bohemian Savings and Loan Association
4503010713
Bohemian Savings and Loan Association
4650006191
Community Federal Savings & Loan Assn
51306546
Community Federal Savings & Loan Assn
66040897
Farm & Home Savings Association
825500455
"Cash received back"
Southern Community Bank
22775
Southern Community Bank
35933524
St. Louis Federal
330163282
Less transfers
Less Social Security
Less [illegible]
*458 Bank
Deposits
Bohemian Savings and Loan Association
19,477.83 Bohemian Savings and Loan Association
10,845.72 Community Federal Savings & Loan Assn
440.05 Community Federal Savings & Loan Assn
33,389.92 Farm & Home Savings Association
3,089.00 "Cash received back"
30.00 Southern Community Bank
1,923.44 Southern Community Bank
4,549.32 St. Louis Federal
75.54 73,820.82 (5,459.82)
(5,659.20)
(4,240.05)
58,461.75 The difference between $ 58,461.75, the above total computed on Schedule I, and $ 58,021.70, the adjustment made by respondent, is $ 440.05. Apparently, this was the amount deposited into account number 51306546 at Community Federal Savings and Loan Association and reported on Schedule C, Profit or (Loss) From Business or Profession, of petitioner's 1984 return as the gross receipts from her "sales & deliveries" business. Respondent's third principal adjustment to petitioner's 1984 return was to disallow certain expenses reported on the Schedule C, referred to above. Schedule C lists petitioner's business activity as "sales & deliveries" and states that the product or service is "vitamins and *459 household products." The notice of deficiency states that respondent disallowed expenses totaling $ 1,068.59 for the following reason: The Schedule C-Expenses are disallowed because they have not been substantiated nor have they been shown to constitute either cost of goods sold or deductible expenses.
As reported on Schedule C, petitioner realized gross receipts of $ 440.05 from this business and sustained a net loss of $ 558.94. The difference between these amounts, $ 998.99, is equal to the sum of the cost of goods sold, $ 190.09, and the other deductions reported on Schedule C, $ 808.90. Nevertheless, respondent increased petitioner's income in the amount of $ 1,068.59. The record does not explain why respondent disallowed $ 69.60 more than the amount deducted. It appears from the notice of deficiency that each of the above three adjustments resulted from petitioner's failure or refusal to cooperate with respondent throughout his administrative audit of her 1984 return and to provide respondent with information to substantiate the amounts reported thereon. Petitioner acknowledged her refusal to cooperate with respondent's agents at the administrative *460 level in her response to respondent's request for admissions. Set out below is item number 7 of respondent's request for admissions, served November 16, 1989, and petitioner's response thereto, served December 26, 1989: [Respondent's request:] 7. The petitioner did not provide any books and records or other information to the Internal Revenue Agent auditing the petitioner's 1984 federal individual income tax return.
[Petitioner's response:] 7. Yes, petitioner refused to offer any books or records or other information to the idiotic internal revenue agent purportedly auditing the tax return for 1984; because petitioner had no time to waste on such non-sense, when the filed return set out all of the information IN FULL DETAIL; and since there never was any taxable income that created a tax liability what-so-ever because petitioner had lost a large sum of money in the stock market, and there was even a loss carry over from the year previous and [sic] a carry over to the year following; and there is still a loss carry over pending which will not ever be used up unless some unforeseen windfall should happen in favor of petitioner. FURTHER: that from *461 past experience reports [sic] from other persons that to submit to an audit at the first level is nothing more than a complete waste of time; and that the auditor spends more time in conducting an inquisition rather than an audit relating to the items offered on the return as lawful deductions, that may be questioned. [Emphasis in original.]
After filing her petition, petitioner continued to refuse to cooperate with respondent's agents and attorneys. On March 12, 1990, respondent filed a document entitled "Chronology of Significant Events" which details respondent's attempts to obtain petitioner's cooperation in resolving this case. Respondent's chronology shows that after the petition was filed, a representative of respondent's Appeals Division wrote to petitioner on two occasions, attempting, without success, to schedule a conference with her to discuss the case. Respondent's attorney then wrote to petitioner and asked to meet with her and inspect certain books and records. Respondent's attorney specifically requested books and records to identify the source of deposits into her bank accounts, substantiate the expenses claimed on Schedule C, and *462 substantiate her cost or other basis in each of the assets reported on Schedule D. Respondent's attorney offered to allow petitioner to review the revenue agent's workpapers when they met. Petitioner answered respondent's attorney with a demand for a complete copy of respondent's administrative file. Less than two weeks later, respondent supplied a copy of his administrative file to petitioner with certain deletions which were enumerated in his transmittal letter. At that time, respondent's attorney urged petitioner to provide the information which he had requested. He also called petitioner's attention to the Court's Standing Pre-Trial Order and Notice Setting Case for Trial, dated October 5, 1989, which directed the parties to cooperate with one another and to agree in writing to all facts and documents about which there should be no disagreement. Respondent's attorney quoted from the notice setting the case for trial, which states: "YOUR FAILURE TO COOPERATE MAY ALSO RESULT IN DISMISSAL OF THE CASE AND ENTRY OF DECISION AGAINST YOU." We note that, among other things, the Standing Pre-Trial Order directs the parties as follows: It is hereby ORDERED that all facts shall *463 be stipulated to the maximum extent possible. All documentary and written evidence shall be marked and stipulated in accordance with Rule 91(b), unless the evidence is to be used to impeach the credibility of a witness. Objections may be preserved in the stipulation. If a complete stipulation of facts is not ready for submission at trial, and if the Court determines that this is the result of either party's failure to fully cooperate in the preparation thereof, the Court may order sanctions against the uncooperative party. Any documents or materials which a party expects to utilize in the event of trial (except for impeachment), but which are not stipulated, shall be identified in writing and exchanged by the parties at least 15 days before the first day of the trial session. The Court may refuse to receive in evidence any document or material not so stipulated or exchanged, unless otherwise agreed by the parties or allowed by the Court for good cause shown. It is further ORDERED that unless a basis of settlement has been reached, each party shall prepare a Trial Memorandum substantially in the form attached hereto and shall submit it directly to the undersigned and to the opposing *464 party not less than fifteen (15) days before the first day of the trial session.
Petitioner again wrote to respondent's attorney on October 27, 1989, and, among other things, stated: "TAKE NOTICE; THAT I WILL STIPULATE ONLY TO THE FOLLOWING: That there is no tax deficiency in this case." (Emphasis in original.) Petitioner also stated, "you have the power of discovery; use it properly. Secure the brokerage records." On November 16, 1989, after respondent's informal request for information had been outstanding approximately 48 days, respondent served on petitioner a request for admissions, a request for production of documents, and interrogatories. Petitioner's responses to these discovery requests, served December 20, 1989, continued her pattern of refusing to provide any information to respondent. For example, in response to respondent's request that petitioner substantiate the Schedule C expenses of her "sales & deliveries" business, petitioner called the interrogatories on that subject "ABSOLUTELY IDIOTIC." (Emphasis in original.) She stated that her Schedule C "CLEARLY SHOWS THAT SUCH RIDICULOUS EXTENSIVE INTERROGATION IS COMPLETELY UNNECESSARY IN THE *465 PREMISES because the total take or sales was only $ 440.05 after cost of goods were deducted a gross profit of only 249.96; and the meager expenses allocated thereto created a MERE PITTANCE of a loss of only $ 558.94." (Emphasis in original.) On this issue, petitioner stated in her response to the request for production of documents that "PETITIONER AGAIN STATES THAT SHE WILL NOT WASTE ANY OF HER TIME TO EITHER PROVE OR DISPROVE ANY THING RELATED THERETO." Petitioner also refused to supply any information concerning the stock transactions reported on her return and simply directed respondent's attention to the schedules attached to her return. Petitioner's response to respondent's interrogatory concerning her stock transactions is as follows: 5. That to answer respondent's interrogatory #13 would be only REPETITIOUS for respondent is in possession of every question asked under subsections (a) to (i) because the answers are fully setout [sic] in such exhibit A (docket #23250-88 made a part of Respondent's request for Admissions) which are attachments to her form 1040 filed and numbered in a circle pages 2, 3, and 4, which were entered from the 'OPENING' and 'CLOSING' *466 statements indicating whether you 'owed' for a purchase; or to receive a check for a sale of same; and on these statements the commissions are adjusted to the billings. [Emphasis in original.]
Similarly, petitioner's response to respondent's request for production of documents concerning the stock transactions is as follows: 12. That petitioner will not waste any time to pacify the respondent in relation to prove out [sic] all of her stock transactions; WHEN ALL THAT RESPONDENT HAS TO DO IS ISSUE A THIRD PARTY SUMMONS directed to the Brokerage Firms, for all of the answers to the questions directed to petitioner will be found thereon. FURTHER: petitioner DOES NOT HAVE ANY FUNDS AVAILABLE TO PAY SOME THIRD PARTY TO 'BABY SIT' HER RECORDS WHILE RESPONDENT IS COPYING THE SAME. IN CONCLUSION on this subject if respondent forwards sufficient funds IN ADVANCE for her to be able to compensate some one just to please respondent's demands and wishes; then they will be complied with. OR IN THE ALTERNATIVE, respondent could post a cash bond sufficient to cover the loss of said documents, she would gladly surrender the same for respondent's *467 pleasure and permanent keeping as far as she is concerned. [Emphasis in original.]
Respondent's Request for Admissions sets forth his analysis of the deposits into petitioner's bank accounts. In his interrogatories and request for production of documents, respondent asks petitioner to respond to questions about her bank deposits only if she denies the statements in the request for admissions or contends that any of the deposits are nontaxable. Petitioner responded to the interrogatories as follows: 6. That to answer Respondent's interratories [sic] #14 to #37 are beyond the scope of anyone's recall; and if she did so answer Respondent would not accept the same until he had an opportunity to cross exam [sic] at the trial, and if same comes to trial; she will then be fully prepared to answer the same. 7. That to further answer this point petitioner fully set out the details generally in full in her petition under paragrah [sic] #4 with a supplement attached, of her banking operations; in regards to the stock transactions., etc.
Furthermore, petitioner responded to the request for production of documents concerning the bank *468 accounts as follows: 13. to 20. Petitioner does not deny that she controlls [sic] all of the bank accounts set forth therein. 21. to 28. Here again, petitioner points out to respondent that to comply with the request will cost an enormous amout [sic] of money to comply, which funds she does not have available for same; nor any time available for same; and if after she completed it, respondent still would reject the same; so if the subject comes down to the wire, petitioner would just as soon testify line by line of each and every bank entry on each and every statements [sic] of all of the financial institutions which you know have third party returns from said summons. IN CONCLUSION on this subject, of course, if respondent wishes to post sufficient funds paid in advance to petitioner, the said request could be complied with. [Emphasis in original.]
Petitioner gave the following overall summary of her responses to respondent's interrogatories: THAT IN SUMMARY, petitioner further states that all of the income that was taxable in the year of 1984 was timely and properly and fully reported thereon; and that everything else that *469 may appear on the purported 'DEFICIENCY' are purely GUESS, SPECULATION, and SURMIZE [sic] on the part of the malicious and INCOMPETENT AUDITOR; who did not complete her audit properly and who failed to order the statements from the Brokerage house; in which all details would have been explained thereon. [Emphasis in original.] Petitioner also summarized her response to her request for production of documents as follows: IN SUMMARY: If anything further is required of petitioner, she stands ready to testify line by line if necessary in the court proceedings. FOR SHE HAS LOST A LARGE SUM OF MONEY IN THE STOCK MARKET AND HAS NO MONEY TO WASTE OR ANY TIME TO WASTE FOR THE MERE WHIMS OF RESPONDENT. IN CONCLUSION, petitioner feels that she has fully answered Respondent's request for production of documents in that respondent has one of three choices: (1,) issue a third party summons to stock Brokerage firms: (2.) Advance cash sums sufficient to pay for a third party to 'BABY SIT' her documents while respondent photo copies them; and likewise for the answers for the all of the tax free deposits in the financial institutions; (3.) *470 POST A CASH BOND for the documents in the hands of petitioner; and of course (4.) prepare for a lengthy trial of the issues herein set out. [Emphasis in original.]
Despite petitioner's responses, respondent's attorney made still another attempt to obtain petitioner's cooperation "to resolve the case administratively" in a letter to her dated December 21, 1989. He also returned the case to the respondent's Appeals Division and an appeals officer again wrote to petitioner offering her another opportunity for an administrative conference. Petitioner apparently did not respond to either letter, and, on January 16, 1990, respondent's attorney filed Motion to Compel Responses to Interrogatories and Motion to Compel Production of Documents. The Court granted respondent's motions and directed petitioner to answer the interrogatories and produce the requested documents on or before February 16, 1990. The Court further warned petitioner as follows: Petitioner should be advised that if she continues to refuse to answer any of respondent's interrogatories or continues to refuse to produce any of the documents requested by respondent, she will not only be in violation *471 of Rules 71, 72 and 104 of the Rules of Practice and Procedure of this Court and the terms of this order, but she will make it impossible for the parties to prepare a stipulation of fact as required by the Court's standing pre-trial order, dated October 5, 1989, and Rule 91. In such event, the Court will be inclined to impose sanctions against her which may include dismissal of this case.
Petitioner filed her response to the Court's order on February 21, 1990. She stated that she was unable to comply with the Court's order directing her to produce the documents requested by respondent because on February 16, 1990, she had a hospital appointment "for evaluation of a 'STRESS TEST.'" (Emphasis in original.) Petitioner further stated that she had "a 'HEART CONDITION' classified as 'ANGINA.'" Petitioner made the following comment concerning the effect which the case was having on her physical condition: 10. That of course, her condition has become worse, due to this constant aggravation of this ILLEGAL and VICIOUS deficiency rendered and based and PREDICATED wholly upon the whimsical figments of the mind of any malicious, revengeful internal revenue service *472 auditor; who, without any restraints what-so-ever, is in a position and is able to render any deficiency that she may see fit to do so; and BASED WHOLLY on her mere PRESUMPTIONS that are created by her own whim, guess, and speculation. [Emphasis in original.] Petitioner further directed respondent to issue a third-party summons to her brokerage firm and stated as follows concerning other documents: 13. THAT TO AID IN THE PRODUCTION OF SAID DOCUMENTS, she has given them to the accountant and tax preparer: HARVEY F. EUGE and his associates; P.O. BOX 10721, St. Louis, Missouri, 63129.
14. That she CAN NOT [sic] AFFORD financially to pay him or his associate for the mileage or the time involved for the delivery of the documents to respondent; or the time involved to 'BABY SIT' or guard the said documents while respondent inspects the same or photocopy them at their expenses; THUS THE RESPONDENT CAN ISSUE A THIRD PARTY SUMMONS upon Mr. Euge and his associate; and then PREPAY the costs thereof under the provisions of the internal revenue code provisions thereof. [Emphasis in original.]
Significantly, *473 in her response to the Court's order, petitioner gave no reason why she could not supply the documents on a day other than February 16, 1990, the date of her hospital appointment, and she failed to give any explanation whatsoever for her failure to respond to respondent's interrogatories. Shortly before trial, as required by the Court's Standing Pre-Trial Order and by Rule 91, Tax Court Rules of Practice and Procedure, respondent prepared an eight-page stipulation of facts which he sent to petitioner for review and agreement. (All Rule references are to the Tax Court Rules of Practice and Procedure.) Petitioner responded on February 22, 1990, by deleting virtually every item of the proposed stipulation, except the fact that she filed her 1984 tax return and the fact that respondent issued a notice of deficiency in response thereto. The parties failed to submit a stipulation of fact at trial, as required by Rule 91 and our Standing Pre-Trial Order. The Court determines that this was the result of petitioner's failure to cooperate with respondent. When the case was called for trial in St. Louis, Missouri on March 12, 1990, neither petitioner nor an authorized representative appeared *474 on her behalf. Instead, an individual, Mr. Harvey F. Euge, who described himself as a friend of petitioner and the person who prepared her 1984 return, appeared on her behalf. Mr. Euge is not an attorney, a certified public accountant, or an enrolled agent. He is, however, the person to whom petitioner referred in her response to the Court's order dated January 18, 1990, when she stated, as quoted above, "THAT TO AID IN THE PRODUCTION OF SAID DOCUMENT, she has given [her records] to the accountant and tax preparer: HARVEY F. EUGE and his associates." (Emphasis in original.) On petitioner's behalf, Mr. Euge filed a pleading entitled "Motion for Substitution of Party," in which petitioner moved the Court "to substitute: HARVEY F. EUGE, as a party to act in her behalf." (Emphasis in original.) Mr. Euge stated that petitioner's motion was made pursuant to Rule 63(d). Petitioner's Motion for Substitution of Party was denied. Mr. Euge also filed on petitioner's behalf a document entitled "Petitioner's Verified Motion to Abate the Deficiencies." In that document, petitioner argues that the Court should "abate the tax deficiencies" on the ground that "all of the entries *475 and attachments to her U.S. INDIVIDUAL INCOME TAX RETURN are true and correct in every detail; AS FILED." (Emphasis in original.) In support of that proposition, petitioner attached a copy of two pages taken from statements issued by R. Rowland & Co., Inc., regarding joint brokerage account number 050-230588-063 in the name of Mary E. Swingler and Earl R. Ross. One page is from a brokerage statement "ending 01-27-84" and is "page 2 of 3" of that statement. The other page is from a brokerage statement "ending 12-31-84" and is "page 4 of 5" of that statement. Based upon those attachments, petitioner argues as follows: IN CONCLUSION on this point, all of the trading set out had to come from somewhere and the said opening statement is proof enough that some stocks were owned by petitioner; and the actual value at the time is clearly shown.
Petitioner also set out in Petitioner's Verified Motion to Abate the Deficiencies an analysis of the deposits into her bank accounts. Petitioner's analysis purports to explain $ 61,829.86 of the $ 74,856.67 in total deposits made during 1984. The difference, $ 13,026.81, petitioner explains, "consists of purchase rebates *476 [sic] collected payments on visa purchases, gifts, all of which have not been analyzed or traced at this time." Petitioner's own analysis of bank deposits during 1984, therefore, fails to explain deposits totaling $ 13,026.81. The Court denied Petitioner's Verified Motion to Abate the Deficiencies. At the time of trial, Mr. Euge also tendered to the Court the trial memorandum which the Court, in its Standing Pre-Trial Order, had ordered the parties to submit to the Court and to the opposing party not less than 15 days before the first day of the trial session. The Court refused to accept petitioner's untimely trial memorandum. We note that during the proceedings on March 12, 1990, Mr. Euge stated that petitioner's records were "down in the car in the parking lot." The Court ordered Mr. Euge to give petitioner's records to respondent's attorney for inspection by respondent's agents. The hearing was adjourned in order to give Mr. Euge an opportunity to comply with the Court's order and to contact petitioner by telephone. Mr. Euge refused to comply with the Court's order. As matters stood on March 12, 1990, it was clear that petitioner's unavailability prevented trial of the *477 case. It was also clear that petitioner had prevented the parties from submitting a stipulation, as required by Rule 91 and our Standing Pre-Trial Order, and failed to submit a timely trial memorandum, as required by the Standing Pre-Trial Order. Finally, it was clear that petitioner had thwarted respondent's attempts to obtain reasonable discovery concerning the issues raised in the petition. Accordingly, the Court announced that it would dismiss the case on respondent's oral motion and impose damages of $ 1,000 on petitioner pursuant to section 6673. The Court considered such action appropriate because it found that petitioner had failed to properly prosecute her case, refused to permit respondent any inquiry into her financial affairs, and refused to provide any information in response to respondent's reasonable informal and formal discovery requests. On March 14, 1990, before the Court issued an order dismissing the case, petitioner filed a document entitled, "Petitioner's Motion to Set Aside the Default and Dismissal of Her Cause of Action Rendered on the 12th Day of March, 1990." In view of the fact that petitioner's case had not then been dismissed, this document was deemed *478 to be an objection to respondent's oral motion to dismiss and is referred to herein as petitioner's objection to dismissal. Significantly, petitioner attached, as an exhibit to such document, copies of selected pages from monthly statements of the brokerage account discussed above. Among other things, petitioner argues in her objection to dismissal that Petitioner's Verified Motion to Abate the Deficiencies should be granted. Petitioner also argues that her heart condition and other ailments prevented her from appearing before the Court for trial. On March 22, 1990, petitioner filed a document entitled "Petitioner's Additional Documentation to Support Her Medical Disability," in which she states that she has shown "ample proof of her disability of long standing [sic] to sustain her * * * failure to appear in court on the setting of her cause." (Emphasis supplied.) Upon consideration of those documents, the Court, on May 3, 1990, ordered petitioner to answer respondent's interrogatories and request for production of documents, served November 16, 1989. The Court also directed petitioner to further document her claim of ill health and explain why she had failed to give the *479 Court and respondent prior notice of her intention not to appear for trial based upon her "long-standing" heart condition. Finally, the Court suspended consideration of petitioner's objection to dismissal and Petitioner's Additional Documentation to Support Her Medical Disability until after the date petitioner's response to the Court's order was due. After obtaining an extension of the response date, petitioner responded to the Court's order in a document entitled "Petitioner's Answer to Court Order Dated May 3, 1990," which was received by the Court on June 25, 1990. In her response, petitioner continued her long-standing and obdurate refusal to answer respondent's interrogatories and request for production of documents. In response to the Court's order directing her to answer respondent's interrogatories, petitioner refers to the answers which she originally served on December 20, 1989. Those answers, which are described above, were before the Court when it granted respondent's motion to compel and when it warned petitioner of possible sanctions if she continued to refuse to answer respondent's interrogatories. Nevertheless, petitioner makes reference to the same answers and *480 states as follows: Petitioner feels that she fully complied with the requests for interrogatories of respondent; and that she answered the same to her best ability and knowledge; and she further states that the Court rules DO NOT COMPEL her to disclose information which is already in possession of respondent herein; and that being, THE STOCK TRANSFERS having been set out in full on the tax return filed by petitioner; as exhibits thereto. [Emphasis in original.]
In response to the Court's order directing her to produce the documents requested by respondent, petitioner states that she has fully complied with the Court's order through: (1) her response to the original request for production which she served on respondent on December 20, 1989; (2) the selected pages of the brokerage firm's monthly account statements attached to her objection to dismissal, filed March 14, 1990; and (3) the information contained in, and the exhibits attached to, Petitioner's Verified Motion To Abate The Deficiencies, filed March 12, 1990. On July 2, 1990, respondent filed Motion to Impose Sanctions wherein he asks the Court to dismiss this case under Rule 104 because of petitioner's *481 failure to comply with the Court's discovery orders and to award damages to the United States under section 6673. In passing, we note that petitioner resided in St. Louis, Missouri at the time she filed her petition. OPINION This is a substantiation case in which respondent based his determination on petitioner's failure during audit to substantiate her bases in the securities listed on Schedule D, the deposits made to her bank accounts, and the deductions claimed on Schedule C. Unfortunately, even after petitioner filed her petition in this Court, she has continued her obdurate and unreasonable refusal to substantiate the above items to respondent's attorney and has disregarded at least two orders of this Court directing her to do so. Moreover, petitioner has otherwise failed to prosecute this case. On October 5, 1989, the Court served on the parties its Notice Setting Case for Trial and its Standing Pre-Trial Order, which directed the parties to undertake informal and voluntary discussions to narrow the issues and prepare a stipulation of facts. The Court's Standing Pre-Trial Order also directed the parties to exchange, at least 15 days before the first day of the trial *482 session, any documents or materials which they anticipated using at trial (except for impeachment) and to exchange a trial memorandum identifying witnesses and setting forth a brief summary of their anticipated testimony. Petitioner refused every invitation made by respondent's agents and attorneys to meet and informally discuss the case and exchange information. She taunted respondent's attorneys, in a letter dated October 27, 1989, that she would "STIPULATE ONLY TO THE FOLLOWING: 'That there is no tax deficiency in this case,'" (emphasis in original) and, in accordance with that threat, she ultimately refused to stipulate to anything other than the fact that she filed her 1984 income tax return and the fact that respondent issued the notice of deficiency in this case. Finally, petitioner failed to file a timely trial memorandum in conformity with the Standing Pre-Trial Order. We note that petitioner failed to appear for trial on March 12, 1990. We also note respondent's skepticism about petitioner's claim that her long-standing heart condition, combined with flu and a bladder infection, prevented her from appearing for trial and from notifying respondent and the Court ahead *483 of time that she would be unable to appear. Respondent's attorney points out that in an attachment to petitioner's answer to the Court's order dated May 3, 1990, petitioner's doctor, Edward W. Heidbrier, merely stated that petitioner "may have been too ill to appear before the Court" on the trial date. He concludes that Dr. Heidbrier is unable to give an opinion that the petitioner was, in fact, too ill to appear before the Court. We further note that petitioner's Verified Motion to Abate the Deficiencies, filed March 12, 1990, contains the affidavit of a notary public stating that petitioner appeared before him on March 12, 1990, the same day as the trial date. Nevertheless, we have taken into consideration petitioner's advanced age and general state of health, as described by her physician. In reaching our decision in this case, we have placed no significance whatsoever upon the fact that petitioner failed to appear for trial on March 12, 1990. Before turning to whether this case should be dismissed, we discuss petitioner's contention, contained in her answer to the Court's order dated May 3, 1990, that she has "fully complied" with both respondent's interrogatories and his *484 request for production of documents. In this discussion, we compare the information requested by respondent with the information provided by petitioner to see whether petitioner has reasonably supplied the information requested as to each of the three principal issues raised in the notice of deficiency. In the case of petitioner's securities transactions, respondent's interrogatories ask for the acquisition date, cost, and certain other information about each of the stocks and options reported on Schedule D. Similarly, respondent's request for production of documents asks petitioner to supply "a copy of all invoices, receipts, checks, documents, financial statements, brokerage statements, or other records that substantiate" the acquisition date and acquisition cost of each asset reported on Schedule D. Petitioner never supplied this information, and what she did supply, consisting of selected pages of brokerage statements issued by R. Rowland & Co., Inc., is not sufficient to establish petitioner's basis in any of the assets reported on Schedule D. First, petitioner supplied pages which deal only with the year 1984 and do not reveal anything about the cost of petitioner's stocks *485 or options acquired prior to 1984. Second, petitioner did not supply a complete brokerage statement for any month. Each of the pages supplied shows that the complete statement includes additional pages which were not supplied. Third, petitioner maintained the brokerage account with another individual, Earl R. Ross. The record does not reveal the identity of that individual nor the amount, if any, which he contributed toward the purchase of each of the assets reflected on the statement pages supplied. Fourth, petitioner failed to supply checks or other evidence to show that she paid the acquisition cost claimed on Schedule D for the subject stocks and options. Similarly, the information supplied by petitioner about her bank deposits is inadequate. Respondent's interrogatories ask petitioner to specifically identify each nontaxable deposit from among the deposits set forth in respondent's request for admissions and to explain why it is nontaxable. Respondent's interrogatories also ask petitioner to identify any deposit reported on her 1984 tax return and list the schedule and line where it was reported. Respondent's request for production of documents asks petitioner to supply *486 a copy of all documents or other records to substantiate the claim that a deposit is non-taxable or was reported on petitioner's return. Petitioner's Verified Motion to Abate the Deficiencies states that respondent's bank account analysis fails to reflect the fact that a total of $ 4,382.90 was reported on petitioner's return as pensions and dividends. Petitioner, however, does not state where any such pension or dividend payment was deposited, and the Court cannot readily verify that any such amount is included in respondent's analysis. Petitioner's Verified Motion to Abate the Deficiencies also acknowledges that the deposits made to the subject accounts during the year total $ 74,856.67 and purports to identify $ 55,426.81 of that amount as "transfers." Except in one instance, petitioner does not specifically identify the account from which any of the transfers were made, and she fails to provide supporting documentation for her claim that certain amounts are "principal payments on bonds," "stock dividends deposited (reported)," and "tax-free bond dividends." Finally, both respondent's interrogatories and request for production of documents seek substantiation of the expenses *487 claimed on Schedule C for petitioner's "sales & deliveries" business. Petitioner has provided no information whatsoever to substantiate these expenses. Respondent's Motion to Impose Sanctions asks for dismissal pursuant to Rule 104. Rule 104(c)(3) provides that the Court may dismiss a case or any part thereof as a sanction against a party who fails to obey a discovery order of the Court. In this case, petitioner failed to obey the Court's order, dated January 18, 1990, directing her to answer respondent's interrogatories and produce the documents identified in his request for production of documents. Additionally, petitioner failed to obey the Court's order, dated May 3, 1990, in which the Court again ordered petitioner to answer the discovery requests. Dismissal under Rule 104 is appropriate where a taxpayer fails to comply with such discovery orders of the court. Miller v. Commissioner, 741 F.2d 198 (8th Cir. 1984), affg. an order of this Court; Hart v. Commissioner, 730 F.2d 1206 (8th Cir. 1984), *488 affg. an order of this Court; Dusha v. Commissioner, 82 T.C. 592 (1984). In deciding whether to dismiss a case under Rule 104(c), we follow the standard announced by the Supreme Court in Society Internationale v. Rogers, 357 U.S. 197, 206-208 (1958), which requires a finding that the noncompliance was due to "willfulness, bad faith or any fault" rather than mere inability to comply. Dusha v. Commissioner, supra at 597-605.We have no difficulty making such finding in this case. Petitioner's response to the Court's order of May 3, 1990, makes it perfectly clear that petitioner has no intention of answering respondent's formal discovery requests of November 16, 1989, and that her disobedience of the Court's orders that she do so is willful and in bad faith. Petitioner was ordered to answer respondent's discovery requests in the Court's order dated January 18, 1990, and was warned, at that time, that if she continued to refuse to answer respondent's discovery, then the Court "will be inclined to impose sanctions against her which may include dismissal of this case." The Court's order dated May 3, 1990, was issued as "a final *489 opportunity" for petitioner "to comply with respondent's discovery requests which have been outstanding since November 16, 1989." Nevertheless, as described above, petitioner's response to the Court's order dated May 3, 1990, is incomplete and evasive. Respondent's motion does not address whether default or dismissal of this case is also justified under Rule 123. In our view, it is. Rule 123(a) provides that the Court may hold a party in default where she has failed to proceed as provided by the Court's Rules, or as required by the Court, and that the Court may thereafter enter a decision against the defaulting party. Rule 123(b) provides that the Court may dismiss a case and enter a decision against petitioner for failure to properly prosecute the case or to comply with the Court's Rules and any order of the Court or for any other cause which the Court deems sufficient. This Court has consistently given Rule 123 broad application. Stringer v. Commissioner, 84 T.C. 693, 706 (1985), affd. without published opinion 789 F.2d 917 (4th Cir. 1986). *490 Application of this Rule is appropriate where a party fails to comply with Court-ordered discovery, or to stipulate and prepare for trial. Long v. Commissioner, 742 F.2d 1141 (8th Cir. 1984), affg. per curiam an order of this Court; Miller v. Commissioner, supra; Hart v. Commissioner, supra; Miller v. Commissioner, 654 F.2d 519 (8th Cir. 1981), affg. an order of this Court; Levy v. Commissioner, 87 T.C. 794 (1986); Rechtzigel v. Commissioner, 79 T.C. 132 (1982), affd. per curiam 703 F.2d 1063 (8th Cir. 1983).In this case, petitioner has not only disobeyed the Court's discovery orders, as noted above, but she has also disobeyed the Court's Standing Pre-Trial Order, dated October 5, 1989, directing the parties to stipulate and prepare for trial. We are reluctant to dismiss any case based upon the misconduct or failure of a party, acting pro se, to comply with orders of the Court. We are particularly unhappy to have to do so here in view of petitioner's age. The record, however, leaves no doubt that petitioner was advised *491 of her obligation to cooperate with respondent in preparing for trial of this case, to comply with the Court's Rules, and to obey the Court's orders, and that she was warned of the consequences of her failure to do so. By her stubborn and unjustifiable conduct, she has shown no interest in meaningful prosecution of this case, and, in fairness, respondent is entitled to have an end to it. Accordingly, we find petitioner in default pursuant to Rule 123(a) and dismiss this case pursuant to Rules 104(c)(3) and 123(b). We next consider respondent's request for the imposition of damages against petitioner pursuant to section 6673. Under section 6673(a), as amended by section 7731(a), Omnibus Budget Reconciliation Act of 1989, Pub. L. 101-239, 103 Stat. 2400, applicable to "positions taken after December 31, 1989, in proceedings which are pending on, or were commenced after such date," this Court is authorized to award a "penalty," not in excess of $ 25,000, to the United States if (1) petitioner has instituted or maintained proceedings before this Court primarily for delay, (2) petitioner's *492 position therein is frivolous or groundless, or (3) petitioner unreasonably failed to pursue available administrative remedies. Prior to such amendment, the statute authorized this Court to impose "damages" not in excess of $ 5,000 for similar conduct. Petitioner's conduct, as discussed above, indicates that she used this proceeding as a dilatory tactic. See, e.g. Wilkinson v. Commissioner, 71 T.C. 633 (1979).After filing her petition, she has failed to take reasonable steps to prosecute her suit, substantiate the subject adjustments, or address the merits of this case. Moreover, she has consistently resisted, through inaction or unresponsive answers, all efforts by respondent and the Court to obtain the information necessary to bring this matter to a resolution. Moreover, it is clear that petitioner unreasonably failed to pursue available administrative remedies by refusing to substantiate the amounts reported on her 1984 return when asked to do so by respondent's agents at the administrative level. See, e.g., Birth v. Commissioner, 92 T.C. 769 (1989).As noted above, petitioner specifically admitted this fact in her response to respondent's *493 request for admissions. We also observe that respondent's Appeals Division invited petitioner to discuss the case on at least three occasions, and gave her ample opportunity to substantiate the subject items. Petitioner declined to do so. Review of the record convinces us that petitioner instituted and maintained this proceeding primarily for delay, and unreasonably failed to pursue available administrative remedies. Accordingly, we grant respondent's motion and require petitioner to pay to the United States the sum of $ 1,000.00. To reflect the foregoing, An appropriate order and decision will be entered for the respondent.